61 A.3d 1278

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MICHAEL CAHILL, DEFENDANT–RESPONDENT.

Argued October 10, 2012—Decided April 1, 2013.

254

*Jason Magid,* Assistant Prosecutor, argued the cause for appellant (*Warren W. Faulk,* Camden County Prosecutor, attorney).

*Marissa J. Costello* argued the cause for respondent (*Costello & Whitmore,* attorneys).

*Jeffrey Evan Gold* argued the cause for amicus curiae New Jersey State Bar Association (*Kevin P. McCann,* President, attorney; *Mr. Gold* and *Susan A. Feeney,* of counsel and on the brief).

*Alexander R. Shalom* argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (*Edward L. Barocas* and *Rutgers Constitutional Litigation Clinic Center for Law & Justice,* attorneys; *Mr. Shalom, Mr. Barocas, Ronald K. Chen* and *Jeanne M. LoCicero,* of counsel and on the brief).

Judge CUFF (temporarily assigned) delivered the opinion of the Court.

Michael Cahill was involved in an automobile accident after a night of drinking. Following his arrest for driving while intoxicated, and after administration of an Alcotest, Cahill was charged with various motor vehicle offenses, including driving while intoxicated, reckless driving, consumption of alcohol in a vehicle, and possession of an open container. He was also charged with aggravated assault. A few months later, a grand jury returned an indictment charging defendant with assault by auto. Defendant pled guilty to fourth-degree assault by auto, and a judge sentenced him to a one-year term of probation plus all applicable fines and penalties. The Superior Court judge remanded the driving-while-intoxicated charge to the municipal court where it languished until defendant received a letter notifying him that the matter was scheduled for trial approximately one month later. Sixteen months elapsed between the sentence date for the indictable offense and notice of trial in the municipal court.

Defendant promptly filed a motion to dismiss for violation of his right to a speedy trial. The municipal court judge denied the motion. On de novo appeal to the Superior Court, the Law Division judge reversed, and the Appellate Division affirmed.

We conclude that the four-factor balancing analysis of *Barker v. Wingo*, 407 *U.S.* 514, 92 *S.Ct.* 2182, 33 *L.Ed.*2d 101 (1972), remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial in all criminal and quasi-criminal matters. In reaching this conclusion, we decline to establish a bright-line rule as urged by amici. We also reject the notion that only two of the four *Barker* factors—length of delay and reason for the delay—should apply for quasi-criminal driving-while-intoxicated or refusal-to-submit-to-a-breath-test charges. As to defendant, we hold that the unexplained delay of sixteen months between remand to the municipal court and notice of trial date is inordinate and unreasonable. Although defendant did not request or demand disposition of the remaining charges in the municipal court during this period, his failure to assert his right to a speedy trial until receipt of a trial notice is relevant to, but not dispositive of, the speedy trial analysis. Coupled with the general anxiety caused by a lingering charge of this nature and the impact of the sanctions on defendant's ability to obtain and retain employment, the delay violated defendant's right to a speedy trial.

I.

On October 27, 2007, defendant was at a bar drinking with friends. He left the bar a little after midnight. While driving, he swerved to avoid a blocked traffic lane, crossed two lanes of traffic, and collided with a police car. The officer in the cruiser was injured. Following his arrest, police transported defendant to the police station where they administered an Alcotest; the test recorded a blood alcohol content in excess of .08.

Defendant was issued four tickets: driving while intoxicated, *N.J.S.A.* 39:4–50; reckless driving, *N.J.S.A.* 39:4–96; consumption of alcohol in a motor vehicle, *N.J.S.A.* 39:4–51a; and possession of

an open container, *N.J.S.A.* 39:4–51b. Defendant also received a summons for aggravated assault.

On April 10, 2008, a grand jury returned an indictment for fourth-degree assault by auto, *N.J.S.A.* 2C:12–1(c)(2). On September 19, 2008, defendant pled guilty to that charge. On November 14, 2008, a judge sentenced defendant to a one-year term of probation and imposed all appropriate fines, penalties, and assessments. By letter dated November 14, 2008, the Camden County Prosecutor notified the administrator of the Pennsauken Municipal Court that the motor vehicle tickets issued on October 28, 2007, were returned to that court and defendant had waived double jeopardy. On March 17, 2010, defendant received a letter from the Pennsauken Municipal Court that the motor vehicle charges were listed for trial on April 12, 2010.

Defendant retained an attorney, who promptly filed a motion to dismiss the motor vehicle charges on the ground that the delay denied defendant's right to a speedy trial. Defendant argued the unexplained delay, whether calculated from the date of arrest (twenty-nine months) or from the date of sentence on the indictable offense and notice of trial in the municipal court (sixteen months), was egregious. Although defendant did not assert that his ability to defend the charges was prejudiced, he explained that he had limited his search for employment to short-term positions or places where he would not be required to drive to work, and he had surrendered a job offer that would have required him to drive. He also asserted that he adjusted his job search to focus on a permanent position as time passed because he thought the prosecutor had abandoned the charges. Once he received the trial notice, he returned to his prior strategy of searching for short-term jobs with lower wages.

The State argued that the delay experienced in this case, when an indictment issues from conduct that includes driving while intoxicated, was not uncommon. The municipal prosecutor stated that he learned the indictable charge had been resolved on or about March 5, 2010, when the court administrator received a

facsimile copy of the prosecutor's November letter. The municipal prosecutor also argued that he had no record of a demand from defendant to set a trial date, that all assertions of prejudice were unsupported by a certification from defendant, and that defendant had retained his driving privileges since the accident and the initiation of charges in October 2007.

The municipal court judge denied the motion in an oral opinion. He assessed the delay from the date defendant pled guilty in Superior Court to assault by auto until the date the municipal court notified defendant of the trial date, that is, from November 14, 2008, to March 17, 2010; he considered that delay lengthy but not as lengthy as other cases. He also considered the delay unexplained, attributable to the negligence or carelessness of personnel in either the municipal court's or county prosecutor's office. The municipal court judge rejected the argument that defendant had no ability to assert his right to a speedy trial between sentencing on the criminal offense and receipt of the trial notice in municipal court. Finally, the judge found defendant's assertions of prejudice unsupported and declined to give great weight to his assertions of anxiety and humiliation. Observing that dismissal of all charges was an extreme sanction, the judge stated the arguments presented by defendant did not warrant invocation of a sanction of such severity.

Following denial of his motion, defendant entered a conditional plea of guilty to driving while intoxicated. The judge suspended defendant's driver's license for one year, imposed the required fines, penalties, and assessments, and ordered defendant to attend twelve hours at the New Jersey Intoxicated Driver Resource Program.

Defendant filed an appeal in the Law Division. Following de novo review, the Law Division judge reversed the order of the municipal court denying defendant's speedy trial claim and vacated the guilty plea and sentence. The judge applied the four-factor test identified in *Barker, supra,* 407 *U.S.* at 530, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117, to analyze defendant's speedy trial claim. The

judge measured the delay from the date of sentencing on the indictable offense until the date defendant received notice of trial in the municipal court, that is, from November 14, 2008, to March 17, 2010. In doing so, the judge held that the delay between the date of arrest, October 28, 2007, and the date of sentencing, November 14, 2008, was occasioned by the presentation of the case to the grand jury and resolution of the charge in the Superior Court, and the time period was reasonable. The judge found that the prosecutor notified the municipal court of the disposition of the indictable offense and the remand of the driving-while-intoxicated offense on November 14, 2008. The judge declined to ascribe blame to either the prosecutor or the municipal court, instead finding the delay was due to the negligence of the State. Nonetheless, the judge found the sixteen-month delay unduly excessive. In considering the delay excessive, the judge relied on the 1984 Directive by Chief Justice Wilentz that established sixty days as the recommended maximum period for disposition of a driving-while-intoxicated charge.

The trial judge also held that defendant had no obligation to inquire about a trial date or demand that his matter be scheduled for trial. In regard to prejudice, the judge held that it is not confined to "actual trial prejudice" but "can also be found from employment interruptions, anxiety, unresolved prosecution, drain on finances, and the like." The judge accepted counsel's contention that defendant suffered from anxiety while he awaited disposition of the driving-while-intoxicated charge and also suffered financially due to his need to prepare for the consequences of a driver's license suspension. He accepted defendant's assertion that he purposely accepted short-duration, lower-paying jobs due to his anticipated license suspension.

Finally, the judge noted that defendant had satisfied his probationary term and paid all fines and assessments imposed in 2008. He found it would be "counterproductive" to expose defendant to additional sanctions three years after the event.

The Appellate Division affirmed the order dismissing the driving-while-intoxicated charge and vacating the conditional guilty plea. The panel held that the trial judge properly analyzed and applied the *Barker* factors and concluded that "[t]he circumstances here clearly warranted dismissal of defendant's municipal court charges on speedy trial grounds." We granted the State's petition for certification. *State v. Cahill*, 208 *N.J.* 601, 34 *A.*3d 782 (2011).

## II.

Before this Court, the State argues that the Appellate Division misapplied the *Barker* test and misapprehended the purpose of the 1984 Directive. The State asserts that the ruling runs counter to the strong public policy of eradicating drunk driving and effectively rewards defendant for failing to assert his right to a speedy trial. The State also emphasizes the lack of any support for defendant's statement that he has suffered anxiety or any financial loss due to the lingering charge.

Defendant responds that the Appellate Division correctly applied the *Barker* factors and that it properly interpreted and applied the 1984 Directive. He insists that he had no obligation to urge the State to set a trial date. He disputes the notion that the right to a speedy trial is reserved for serious offenses and that a driving-while-intoxicated charge should never be dismissed on speedy trial grounds. Defendant also argues that a sixteen-month lapse in the prosecution of this quasi-criminal charge, particularly in the face of no explanation for the delay, is excessive and justifies the dismissal of the charge and the vacation of his guilty plea.

Amicus curiae New Jersey State Bar Association (NJSBA) argues that this Court is free to develop its own speedy trial standards provided those standards do not violate the standards articulated by the United States and New Jersey Constitutions. It urges the Court to adopt "black letter" speedy trial standards, particularly for matters in the municipal courts. It also urges that

a defendant should be able to move to dismiss on speedy trial grounds without previously asserting the right and suggests this Court extend *Rule* 3:25–3 to authorize municipal court judges to dismiss a case sua sponte on speedy trial grounds. Furthermore, NJSBA contends that prejudice should be presumed when the delay is unreasonable. Finally, NJSBA urges that all charges arising from a motor vehicle offense like this one should be handled in the Superior Court.

With respect to defendant, NJSBA argues that the delay experienced by defendant must be considered inordinate and blame for the delay must be assigned to the State. It also contends that defendant's failure to assert his right to a speedy trial before receipt of the trial notice is of no consequence, and this Court should assume defendant suffered anxiety due to the unresolved charge.

Amicus curiae American Civil Liberties Union of New Jersey (ACLU) criticizes the use of the *Barker* analysis in the municipal court as unpredictable. ACLU observes that most states have adopted specific time limits for prosecution of minor complaints. It also notes that *Barker* represents the floor for a speedy trial analysis and set time periods will rid the roads of drunk drivers more effectively "than forgiving an untimely prosecution in this one individual case." ACLU urges that the 1984 Directive responded to speedy trial concerns but requests the Court to establish specific timelines for various offenses. Like NJSBA, ACLU submits that defendants should not be required to assert their right to a speedy trial in the face of inaction by the State and should not be required to prove prejudice to prevail. NJSBA and ACLU advocate a two-prong approach for determining speedy-trial issues: length of delay measured by a specifically established timetable for the specific offense and delay occasioned by the State.

## III.

Before 1967, a defendant's right to a speedy trial in this state was governed by the New Jersey Constitution, Article I, Para-

graph 10. *State v. Smith*, 10 *N.J.* 84, 89–90, 89 *A.*2d 404 (1952).[1] In 1967, the United States Supreme Court held that the right to a speedy trial, guaranteed by the United States Constitution, *U.S. Const.* amend. VI, was a fundamental right applied to the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 *U.S.* 213, 222–23, 87 *S.Ct.* 988, 993, 18 *L.Ed.*2d 1, 7–8 (1967). It was not until 1972, in *Barker, supra*, that the United States Supreme Court established a balancing test to evaluate claims of speedy trial violations. The Court identified four non-exclusive factors that a court should assess when a defendant asserts that the government denied his right to a speedy trial: length of the delay, reason for the delay, assertion of the right by a defendant, and prejudice to the defendant. *Barker, supra*, 407 *U.S.* at 530, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117.

The Court rejected the approach advocated by some to identify a time after which a criminal charge would be subject to dismissal. *Id.* at 523, 92 *S.Ct.* at 2188, 33 *L.Ed.*2d at 112–13. It also rejected the demand-waiver rule, which would require a defendant to demand a speedy trial or waive the right. *Id.* at 524–28, 92 *S.Ct.* at 2188–91, 33 *L.Ed.*2d at 113–15. Instead it elected to adopt a case-by-case application of the identified factors. *Id.* at 530, 92 *S.Ct.* at 2191–92, 33 *L.Ed.*2d at 116–17.

In regard to the first factor, the Court held that a delay may be presumptively prejudicial and such a delay will trigger consideration of the other factors. *Id.* at 530, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117. The length of the delay that may be considered presumptively prejudicial depends on the circumstances of the individual

---

[1] This provision is identical to Article I, Paragraph 8 of the 1844 Constitution. *Smith, supra*, 10 *N.J.* at 89, 89 *A.*2d 404. *See also* Robert F. Williams, *The New Jersey State Constitution: A Reference Guide* 38 (1990). As explained by Justice Oliphant, "[d]efendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered." *Smith, supra*, 10 *N.J.* at 93, 89 *A.*2d 404.

case, including the nature of the charged offense. *Id.* at 530–31, 92 *S.Ct.* at 2191, 33 *L.Ed.*2d at 117.

In *Doggett v. United States,* 505 *U.S.* 647, 112 *S.Ct.* 2686, 120 *L.Ed.*2d 520 (1992), the Supreme Court clarified when a lapse of time between indictment and trial triggers a speedy trial inquiry. The Court noted that this factor requires consideration of the amount of time customarily required to dispose of similar charges, and the defendant has the obligation to establish that customary period. *Id.* at 651–52, 112 *S.Ct.* at 2690–91, 120 *L.Ed.*2d at 528. The Court thus recognized that the lapse of time that might trigger a violation of the constitutionally guaranteed speedy trial right depends on the nature of the charges lodged against the defendant. *See id.* at 652 n. 1, 112 *S.Ct.* at 2691 n. 1, 120 *L.Ed.*2d at 528 n. 1. The Court said,

> [d]epending on the nature of the charges, the lower courts have generally found postaccusation delay "presumptively prejudicial" at least as it approaches one year. We note that, as the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* [i]nquiry.
>
> [*Ibid.* (citations omitted).]

A noted commentator explains that most courts have eschewed the nature of the offense approach and instead apply the customary time to disposition approach suggested by *Barker* and *Doggett.* 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.2(b) at 118–19 (3d ed.2007). On the other hand, most decisions have identified a period of one year or slightly more than one year as the time "after which ... it makes sense to inquire further into why the defendant has not been tried more promptly." *Id.* at 119. In *Douglas v. Cathel,* 456 *F.*3d 403, 417 (3d Cir.2006), the court of appeals did not consider a period of three years between charge and trial inordinate in a capital murder case. However, it did consider it long enough to require a full inquiry and balance of the *Barker* factors. *Ibid.* Similarly, in *Wells v. Petsock,* 941 *F.*2d 253, 257 (3d Cir.1991), *cert. denied,* 505 *U.S.* 1223, 112 *S.Ct.* 3038, 120 *L.Ed.*2d 906 (1992), the court recognized that longer delays can be tolerated for serious offenses or complex prosecutions. In any

event, once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining *Barker* factors. *See, e.g., State v. Smith,* 131 *N.J.Super.* 354, 361–70, 330 *A.*2d 29 (App.Div.1974) (reaching all four factors after thirteen-month delay), *aff'd o.b.,* 70 *N.J.* 213, 358 *A.*2d 782 (1976); *Hakeem v. Beyer,* 990 *F.*2d 750, 760 (3d Cir.1993) (finding fourteen-and-one-half-month delay sufficient to warrant further inquiry into *Barker* factors).

Once a defendant asserts a violation of his right to a speedy trial, the government is required to identify the reason for the delay. *Barker, supra,* 407 *U.S.* at 531, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117. If the government deliberately delayed the trial to hamper the defense, this factor will weigh heavily in the defendant's favor. *Ibid.* A missing witness may justify the delay. *Ibid.* A more neutral reason, however, such as negligence or a heavy caseload, will also be weighed against the government, albeit less heavily than deliberate delay, because it is the government's ultimate responsibility to prosecute cases in a timely fashion. *Ibid.*

A defendant does not have an obligation to assert his right to a speedy trial because he is under no obligation to bring himself to trial. *Id.* at 527, 92 *S.Ct.* at 2190, 33 *L.Ed.*2d at 115. Nevertheless, "[w]hether and how a defendant asserts his right is closely related" to the length of the delay, the reason for the delay, and any prejudice suffered by the defendant. *Id.* at 531, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117. As such, the assertion of a right to a speedy trial in the face of continuing delays is a factor entitled to strong weight when determining whether the state has violated the right. *Id.* at 531–32, 92 *S.Ct.* at 2192–93, 33 *L.Ed.*2d at 117.

Finally, prejudice is assessed in the context of the interests the right is designed to protect. *Id.* at 532, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118. Those interests include prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense. *Ibid.*

None of the *Barker* factors is determinative, and the absence of one or some of the factors is not conclusive of the ultimate determination of whether the right has been violated. *Id.* at 533, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118. All factors are related, thereby requiring a balancing of all applicable factors while recognizing the fundamental right bestowed on a defendant to a speedy trial. *Id.* at 533, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118–19.

IV.

We have long recognized that the right to a speedy trial extends to quasi-criminal matters pending in the municipal courts, and we have applied the *Barker* four-factor analysis to speedy trial claims. The right to a speedy trial has been addressed often in the context of driving-while-intoxicated cases. *See, e.g., State v. Misurella,* 421 *N.J.Super.* 538, 25 *A.*3d 270 (App.Div.2011); *State v. Tsetsekas,* 411 *N.J.Super.* 1, 983 *A.*2d 1155 (App.Div.2009); *State v. Berezansky,* 386 *N.J.Super.* 84, 85–86, 99, 899 *A.*2d 306 (App.Div.2006), *appeal dismissed,* 196 *N.J.* 82, 951 *A.*2d 1036 (2008); *State v. Fulford,* 349 *N.J.Super.* 183, 793 *A.*2d 112 (App. Div.2002); *State v. Farrell,* 320 *N.J.Super.* 425, 727 *A.*2d 501 (App.Div.1999); *State v. Prickett,* 240 *N.J.Super.* 139, 572 *A.*2d 1166 (App.Div.1990); *State v. Merlino,* 153 *N.J.Super.* 12, 378 *A.*2d 1152 (App.Div.1977).

Amici ACLU and NJSBA urge the Court to adopt a rule defining the time limit for prosecution of quasi-criminal offenses. The ACLU emphasizes the supervisory power this Court exercises over the courts in this state and urges adoption of a time after which any delay in the prosecution of such offenses constitutes presumptive denial of the right to a speedy trial.

In *Barker,* the Court recognized that the states are "free to prescribe a reasonable period consistent with constitutional standards" and that "some legislatures have enacted laws and some courts had adopted procedural rules" defining the right. 407 *U.S.* at 523, 92 *S.Ct.* at 2188, 33 *L.Ed.*2d at 112–13. Indeed, thirty-two states have adopted either a statute or rule defining the right,

including the time within which a defendant shall be tried and when the time commences to run.[2]  Nevertheless, many of these states still resort to a *Barker* analysis to resolve a constitutional claim of violation of a defendant's speedy trial right.  *See, e.g., People v. Lomax,* 49 *Cal.*4th 530, 112 *Cal.Rptr.*3d 96, 234 *P.*3d 377, 394–402 (2010) (analyzing speedy trial claim under both *Cal.Penal Code* § 1382 and *Barker* ); *Commonwealth v. Martin,* 447 *Mass.* 274, 850 *N.E.*2d 555, 563–64 (2006) (analyzing speedy trial claim under both *Mass. R.Crim. P.* 36 and *Barker* ).  For those states that do not have specific dispositional deadlines, some have generally codified the right to a speedy trial, *see, e.g., Del. R.Crim. P.* 48(b) (allowing dismissal for unnecessary delay); *Mo. Ann. Stat.* § 545.780 (requiring court to set trial date "as soon as reasonably possible" after defendant requests speedy trial), while others have employed only the *Barker* analysis, *see, e.g., Ex Parte Anderson,* 979 *So.*2d 777, 780–84 (Ala.2007) (analyzing right to speedy trial claim under *Barker* ); *State v. Langone,* 127 *N.H.* 49, 498 *A.*2d 731 (1985) (applying *Barker* to delay in trial for driving while intoxicated).

In addition to adopting the *Barker* analysis, this Court has adopted rules governing the prompt disposition of criminal

---

2 These states include Alaska, *Ala. R.Crim. P.* 45;  Arizona, *Ariz. R.Crim. P.* 8.2;  Arkansas, *Ark. R.Crim. P.* 28.1–28.3;  California, *Cal.Penal Code* § 1382;  Colorado, *Colo.Rev.Stat.* § 18–1–405;  *Colo. R.Crim. P.* 48;  Florida, *Fla. R.Crim. P.* 3.191;  Georgia, *Ga.Code Ann.* § 17–7–170;  Hawaii, *Haw. R. Penal P.* 48;  Idaho, *Idaho Code Ann.* § 19–3501;  Illinois, 725 *Ill. Comp. Stat.* 5/103–5;  Indiana, *Ind. R.Crim. P.* 4;  Iowa, *Iowa R.Crim. P.* 2.33;  Kansas, *Kan. Stat. Ann.* § 22–3402;  Louisiana, *La.Code Crim. Proc. Ann. Art.* 578;  Maryland, *Md.Code Ann., Crim. Proc.* § 6–103;  Massachusetts, *Mass. R.Crim. P.* 36;  Michigan, *Mich. Comp. Laws* § 780.131;  *Mich. Ct. R.* 6.004;  Minnesota, *Minn. R.Crim. P.* 11.01;  *Minn. R.Crim. P.* 11.09;  Mississippi, *Miss.Code Ann.* § 99–17–1;  Montana, *Mont.Code Ann.* § 46–13–401;  Nebraska, *Neb.Rev.Stat.* § 29–1207;  Nevada, *Nev.Rev.Stat.* § 178.556;  New York, *N.Y.Crim. Proc. Law* § 30.30;  Ohio, *Ohio Rev.Code Ann.* §§ 2945.71, 2945.73;  Pennsylvania, *Pa. R.Crim. P.* 1013;  South Dakota, *S.D. Codified Laws* § 23A–44–5.1;  Vermont, *Vt. Admin. Order* 5, § 2;  Virginia, *Va.Code Ann.* § 19.2–243;  Washington, *Wash. R.Crim. P.* 3.3;  West Virginia, *W. Va.Code* § 62–3–21;  Wisconsin, *Wis. Stat. Ann.* § 971.10;  and Wyoming, *Wyo. R.Crim. P.* 48(b).

charges without resorting to a specific deadline. *See R.* 3:25–2; *R.* 3:25–3. *Rule* 3:25–2 permits a defendant who has remained in custody after indictment for at least ninety consecutive days to move for a trial date. *Rule* 3:25–3 permits dismissal for an unreasonable delay in presenting a charge to a grand jury or in filing an accusation against a defendant who has been held on a complaint. *Rule* 7:8–5 restates the speedy trial principles of *Rule* 3:25–3 for use in municipal court. We have declined, however, to fix a date certain after which prejudice is presumed or the complaint or indictment must be dismissed, preferring instead to evaluate each claim of denial of a speedy trial on a case-by-case basis. Consistent with this approach, in *State v. Detrick,* 192 *N.J.Super.* 424, 426–27, 470 *A.*2d 933 (App.Div.1983), the Appellate Division disapproved a single vicinage policy that all drunk driving cases should be tried within 60 and 180 days because it prevented the trial judge from applying the law governing speedy trial claims applicable throughout the state.

The Court also has adopted rules and directives governing the right to a speedy trial generally and specifically. As previously noted, *Rules* 3:25–2, 3:25–3, and 7:8–5 address the issue for indictable and non-indictable proceedings in the Law Division and, insofar as practical, in the municipal courts of this state. More-over, in 1984, Chief Justice Wilentz issued a directive stating that offenses under *N.J.S.A.* 39:4–50 (operation of an automobile under the influence of alcohol or drugs) and *N.J.S.A.* 39:4–50a (refusal to submit to a chemical test) "must be disposed of within [sixty] days of filing." Administrative Directive # 1–84 (July 26, 1984) (Directive # 1–84). Directive # 1–84 explained that the sixty-day period was designed to reduce the backlog of those cases and to protect the public from the havoc wrought by intoxicated drivers. *Ibid.* Directive # 1–84 also emphasized the sixty-day period was a goal, did not replace "the traditional guidelines established through case law for dismissals based on lack of a speedy trial," and should not be invoked at the expense of other court efforts to achieve speedy disposition "of more serious disorderly persons complaints." *Ibid.*

Coupled with Guideline 4 of the Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey, Pressler & Verniero, *Current N.J. Court Rules,* Appendix to Part VII (2013), issued in 1990 prohibiting plea bargaining in driving-while-intoxicated cases, Directive # 1–84 reflects the recognition that timely disposition of those charges enhances the penological goals of swift punishment and retribution for a violation of societal standards, *see Barker, supra,* 407 *U.S.* at 519–20, 92 *S.Ct.* at 2186–87, 33 *L.Ed.*2d at 111. In short, Directive # 1–84 addresses issues beyond the individual defendant's right to a speedy trial.

Other than Directive # 1–84, in which the Court established a sixty-day dispositional goal, the Court has steadfastly declined to adopt a bright-line try-or-dismiss rule. Even the sixty-day period announced in 1984 was described as a goal rather than a bright-line rule. Interestingly, the Chief Justice recognized that the growing backlog of cases pending final disposition was occasioned as much by then-new technology, the breathalyzer, as by new legislation establishing stricter penalties and providing funds for stricter enforcement. Directive # 1–84. Implementation of the Alcotest has also precipitated substantial challenges to the accuracy and reliability of the test generally, *see State v. Chun,* 194 *N.J.* 54, 943 *A.*2d 114, *cert. denied,* 555 *U.S.* 825, 129 *S.Ct.* 158, 172 *L.Ed.*2d 41 (2008), and as applied in individual cases, *see, e.g., State v. Holland,* 422 *N.J.Super.* 185, 27 *A.*3d 1212 (App.Div.2011). Indeed, defendant's counsel conceded that the sixty-day goal of Directive # 1–84 in the age of Alcotest is unrealistic and suggested that 90 to 120 days was a more realistic dispositional goal.

■ We decline to adopt a rigid bright-line try-or-dismiss rule. To be sure, on occasion, a case-by-case analysis rather than a bright-line time limitation may lead to seemingly disparate results. For example, in *State v. Perkins,* 219 *N.J.Super.* 121, 125–26, 529 *A.*2d 1056 (Law Div.1987), a judge dismissed a driving-while-intoxicated charge when the State was not prepared to proceed at a peremptory trial date three months after the underlying incident. In two other cases, delays of nearly five months and six

months between arrest and trial were deemed unremarkable. *Berezansky, supra,* 386 *N.J.Super.* at 99, 899 *A.*2d 306 (nearly five months); *Prickett, supra,* 240 *N.J.Super.* at 143–47, 572 *A.*2d 1166 (six months). Similarly, in *Tsetsekas,* the court considered a delay of 344 days between arrest and conclusion of the trial unacceptable, 411 *N.J.Super.* at 10–14, 983 *A.*2d 1155; whereas, in *Fulford,* the court found a thirty-two month delay justifiable, 349 *N.J.Super.* at 190–96, 793 *A.*2d 112.

Different facts lead to different outcomes and therefore the results in those cases are reconcilable under the *Barker* analysis. In *Perkins,* the Law Division found dismissal after three months warranted based on the municipal court judge's promise to dismiss the case if the State was not prepared on a date certain. 219 *N.J.Super.* at 124–25, 529 *A.*2d 1056. The judges in *Berezansky* and *Prickett* made no such promises. *See Berezansky, supra,* 386 *N.J.Super.* 84, 899 *A.*2d 306; *Prickett, supra,* 240 *N.J.Super.* 139, 572 *A.*2d 1166. Further, in *Tsetsekas,* the prosecutor failed to seriously and diligently prepare and proceed to trial despite the municipal court listing the matter for trial every month for six consecutive months. 411 *N.J.Super.* at 12–14, 983 *A.*2d 1155. In *Fulford,* in contrast, the prosecutor affirmatively expressed the State's desire to permit the defendant to complete pretrial intervention on a separate indictable offense prior to adjudicating the driving charges. 349 *N.J.Super.* at 195, 793 *A.*2d 112.

█ We also reaffirm our adherence to the four-factor *Barker* analysis. We do so with the knowledge that facts of an individual case are the best indicators of whether a right to a speedy trial has been violated. We also rely upon the promulgation of measures to avoid future delays such as those encountered in this appeal. On July 12, 2011, the Administrative Office of the Courts released Directive # 04–11, which requires, "[u]nless there is a compelling reason otherwise," disposition of all charges arising from a motor vehicle offense, including municipal court matters, in the Superior Court. Administrative Directive # 04–11 (July 12,

2011) (Directive # 04–11).[3] This mandate assures efficiency, minimizes the number of court appearances for the defendant, and avoids potential double jeopardy issues. *Ibid.* The recently implemented directive and the presently effective procedure should prevent the lengthy delay occasioned by defendant in this case. We recognize, however, that compelling reasons may prevent resolution of all pending municipal court charges with the indictable offenses. Therefore, we address not only defendant's case but also those cases that cannot be resolved with the indictable offenses in the Superior Court due to compelling reasons.

## V.

In light of the factors we have followed consistently, and which we decide in this case to reaffirm, we address defendant's claim that the delay he experienced following remand to the municipal court denied his right to a speedy trial. Thus, we must consider the length of the delay, the reason for the delay, any effort by defendant to assert his right to a speedy trial, and any prejudice suffered by defendant.

The first inquiry is the length of the delay. We measure the length of the delay from the date of filing of the driving-while-intoxicated charge to the notice of trial in the municipal court of the remanded charge. *See Barker, supra,* 407 *U.S.* at 533, 92 *S.Ct.* at 2193–94, 33 *L.Ed.*2d at 119. The inquiry is therefore

---

[3] The Directive provides:

Unless there is some compelling reason otherwise, a Superior Court judge should dispose of all parts of a case before the court, including any associated municipal court matters. This procedure increases the overall efficiency of the court system. It also avoids having the defendant appear for a second matter that arose out of the same event, thus eliminating potential double jeopardy issues. *See, e.g., State v. Hand,* 416 *N.J.Super.* 622, 7 *A.*3d 797 (App.Div.2010). Indeed, when an indictable offense goes to trial, the court is required by *Rule* 3:15–3 to join any pending non-indictable complaint that is based on the same conduct or arising from the same episode, unless the defendant or the State would be prejudiced by doing so. *See also Rule* 3:1–6(a).

whether this twenty-nine-month period is reasonable or whether it violated defendant's right to a speedy trial.

■ The circumstances of the charge lodged against defendant on October 27, 2007, occasioned a further investigation and quickly led to referral to the county prosecutor, presentation of the matter to a grand jury, and the return of an indictment. Once defendant was charged with an indictable offense arising out of the October 27, 2007 incident, prosecution of the driving-while-intoxicated charge prior to resolution of the indictable offenses raised double jeopardy concerns and the possible dismissal of the more serious indictable charges. *See, e.g., Hand, supra,* 416 *N.J.Super.* 622, 7 *A.*3d 797 (barring driving-while-intoxicated prosecution following guilty plea to fourth-degree creating risk of widespread injury or death). Moreover, the State moved promptly to resolve the indictable charges. Defendant pled guilty to assault by auto on September 19, 2008, and the court imposed sentence on November 14, 2008. Thus, under these circumstances, we consider eleven and one-half months between the initial charge and disposition of the indictable offense reasonable.

■ Sixteen months elapsed from remand to the municipal court until notice of the first trial date. This delay is long enough to trigger consideration of the remaining *Barker* factors. Moreover, the remaining charge, driving while intoxicated, is a straightforward quasi-criminal offense. The legal issues were not complicated. All necessary witnesses were available. Under these circumstances, we conclude the length of the delay is too long to resolve a driving-while-intoxicated charge, and we weigh it against the State.

■ The State offers no justification for the delay. None of the usual circumstances that typically contribute to trial delays in the municipal court, such as a conflict of interest requiring recusal of the judge or the prosecutor or missing witnesses, have been identified as the source of the delay. There is a suggestion that the municipal court clerk never received or lost the prosecutor's

November 14, 2008 letter returning the matter to the municipal court. In the end, however, the State offers no explanation for the delay. This factor also weighs heavily against the State.

Defendant did not inquire about a trial date or demand a trial date at any time after remand of the driving-while-intoxicated charge to the municipal court. Instead, he filed a motion to dismiss the driving-while-intoxicated charge promptly after receipt of the trial notice and argued the motion the date of trial. The State suggests defendant's failure to even inquire about the resolution of this remaining charge undercuts the merits of his speedy trial claim. The assertion of a right to a speedy trial is measured heavily in the speedy trial analysis. *Barker, supra,* 407 *U.S.* at 531–32, 92 *S.Ct.* at 2192–93, 33 *L.Ed.*2d at 117. A defendant does not, however, have the obligation to bring himself to trial. *Id.* at 527, 92 *S.Ct.* at 2190, 33 *L.Ed.*2d at 115; *Fulford, supra,* 349 *N.J.Super.* at 183, 793 *A.*2d 112. It is the State's obligation to prosecute and do so in a manner consistent with defendant's right to a speedy trial. *Barker, supra,* 407 *U.S.* at 527, 92 *S.Ct.* at 2190, 33 *L.Ed.*2d at 115. Failure to assert the right is a factor that must be considered in any analysis of an asserted speedy trial violation. *Id.* at 531–32, 92 *S.Ct.* at 2192–93, 33 *L.Ed.*2d at 117. Assertion of the right, however, is not dispositive of the merits of the claim and is certainly not a pre-condition to the invocation of a defendant's right to a speedy trial.

The failure in this case to assert the right until receipt of the trial notice does not counterbalance the lengthy and unexplained delay in bringing this matter to a conclusion. Sixteen months is a long time to dispose of a driving-while-intoxicated case. When experienced counsel, who regularly defend such cases, suggest that 90 to 120 days should be the norm for disposing of such cases, we cannot ignore a sixteen-month period in which nothing occurred to resolve this remaining charge.

The final factor is prejudice. A speedy trial violation can be established without evidence of prejudice. *Farrell, supra,* 320 *N.J.Super.* at 446, 727 *A.*2d 501. Some authorities even suggest

that every unresolved case carries with it some measure of anxiety. *See, e.g., State v. Szima,* 70 *N.J.* 196, 206, 358 *A.*2d 773 ("[T]he defendant automatically endures 'restraints on his liberty' and lives 'under a cloud of anxiety, suspicion, and often hostility.'" (quoting *Barker, supra,* 407 *U.S.* at 533, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118)), *cert. denied,* 429 *U.S.* 896, 97 *S.Ct.* 259, 50 *L.Ed.*2d 180 (1976); *Hanrahan v. United States,* 348 *F.*2d 363, 366–67 (D.C.Cir.1965) ("Speedy trial provisions seek ... to minimize the anxiety and attendant evils which are invariably visited upon one under public accusation but not tried.").

▆▆ Defendant does not identify any particular prejudice to him. Instead, he outlines the employment choices he made in recognition of the impending suspension of his license to operate a motor vehicle. According to defendant, he sought short-term employment and positions that did not require a driver's license or could be accessed by mass transportation or a ride from a friend. These self-imposed limitations narrowed his employment options and relegated him to lower-paying positions.

We must assume that any person who has had limited involvement with the criminal justice system would experience some measure of anxiety by the existence of a pending and long-unresolved charge. This is particularly true when one of the sanctions, a license suspension, would have a dramatic impact on defendant's daily activities and ability to earn a living.

It is suggested that dismissal of the driving-while-intoxicated charge is a windfall for defendant. We must remember, however, that the events of October 27, 2007, led to a conviction of a fourth-degree offense. Defendant has not avoided punishment for his conduct that evening.

▆▆ Balancing the relevant factors and the facts of the specific case, we conclude that the extensive and unexplained delay, coupled with the generalized anxiety and personal prejudice occasioned by the protracted resolution of this matter, requires a finding that the State violated defendant's right to a speedy trial.

The only remedy that will address this violation is dismissal of the charge.

## VI.

We anticipate that remand to the municipal court of quasi-criminal charges, such as driving while intoxicated or refusal to submit to a breath test, will rarely occur following promulgation of Directive # 04–11. The Directive, however, anticipates that there will be some instances, albeit rare, that prevent these charges from being resolved at the same time as the indictable offenses.

Prompt disposition of criminal or quasi-criminal charges addresses the interest of the accused to be treated fairly and the interest of the public to assure quick redress of prohibited conduct. Neither interest is advanced when criminal and quasi-criminal charges remain unresolved for months, if not years. Prompt disposition removes intoxicated drivers from our roads and prevents prejudice to an accused.

As noted earlier in this opinion, the sixty-day period for disposition of driving-while-intoxicated charges was simply a goal. Counsel has suggested that such charges should be able to be resolved within 90 to 120 days. We have determined, however, that we should not adopt an inflexible try-or-dismiss rule. We also hesitate to suggest even an aspirational goal, as goals have a tendency to evolve over time into rules. Nevertheless, we also have determined that the time to conclude any charge, particularly one pending in the municipal courts, should bear some relation to the nature of the offense and the nature of the evidence required to support a conviction. Therefore, a judge confronting a claim that a defendant has been denied his right to a speedy trial must account for the provisions of the order entered to implement the ruling in *State v. Chun*, which addressed the scientific reliability of the Alcotest.

According to the *Chun* implementing order, the State must produce twelve foundation documents, and the State must also create and maintain a centralized statewide database with all

downloaded Alcotest results and make this database available for review by defendants and counsel. 194 *N.J.* at 153, 943 *A.*2d 114.[4] Following review of that material, defense counsel may seek further discovery if irregularities are detected in the foundation materials, which may include issuance of subpoenas and *de bene esse* depositions. *Id.* at 144 n. 47, 943 *A.*2d 114. Defense counsel may also require attendance at trial of the operator who conducted the tests. *Id.* at 154, 943 *A.*2d 114. These considerations, as well as the circumstances of the individual case, will govern application of the *Barker* analysis.

## VII.

In summary, we hold that the four-factor balancing analysis announced in *Barker* remains the governing standard to evaluate claims of denial of the federal and state right to a speedy trial. Although we have embraced a case-by-case consideration of any speedy trial denial claim and have rejected adoption of a bright-line try-or-dismiss rule for quasi-criminal charges, such as driving while intoxicated, we consider the length of the delay in light of the nature of the charges and the complexity, or lack thereof, of the proofs required to establish each element of the offense.

Applying those principles to the speedy trial claim raised by defendant, we conclude that the sixteen-month delay between remand to the municipal court and notice of trial is too long and due entirely to neglect by the State. Defendant's failure to assert his right to a speedy trial during the delay cannot be considered a waiver of this right because the State, not defendant, has the obligation to prosecute the charges it has leveled against him. Defendant also asserted the right as soon as he received the trial notice. In addition, the generalized prejudice experienced by defendant, including anxiety about the unresolved charges and the

---

4 In a December 13, 2012 memorandum to all assignment judges, the Administrative Director of the Courts confirmed that the Centralized Alcotest Records Database was "up and running and available to the public."

impact of the contemplated license suspension on his ability to obtain and retain employment, cannot be disregarded. On balance, the factors fall in favor of defendant's claim that, in this case, the delay deprived him of his constitutionally-guaranteed right to a speedy trial.

## VIII.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judge CUFF (t/a)—6.