**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0489-13T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANKLIN MARINHO,

    Defendant-Appellant.

_____

        Argued September 28, 2016 — Decided August 21, 2017

        Before Judges Fuentes, Simonelli and Gooden
        Brown.

        On appeal from the Superior Court of New
        Jersey, Law Division, Bergen County, Municipal
        Appeal No. 001-20-13.

        James B. Seplowitz argued the cause for
        appellant (Foy & Seplowitz LLC, attorneys; Mr.
        Seplowitz, of counsel and on the brief).

        Elizabeth R. Rebein, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Gurbir S. Grewal,
        Acting Bergen County Prosecutor, attorney;
        Jacqueline Choi, Special Deputy Attorney
        General/Acting Assistant Prosecutor, of
        counsel and on the brief).

PER CURIAM

On September 27, 2012, the North Arlington Municipal Court found defendant Franklin Marinho guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50.[1] This was defendant's third DWI conviction. On October 11, 2012, the municipal court sentenced defendant pursuant to N.J.S.A. 39:4-50(a)(3) to serve 180 days of imprisonment in the Bergen County Jail, imposed the mandatory fines and penalties, revoked defendant's right to operate a motor vehicle in this State for ten years, and directed him to install an ignition interlock device that would remain for the ten-year period of suspension. On that same day, the municipal court entered an order staying the execution of the sentence, but excluded the requirement to install the ignition interlock device, pending the outcome of defendant's appeal for a de novo review before the Law Division as provided under Rule 3:23-8.[2]

On August 13, 2013, defendant appeared before the Law Division represented by private counsel for a trial de novo of his municipal court conviction. Defendant argued that the municipal court

---

[1] The municipal court also convicted defendant of failing to produce the vehicle's registration card, N.J.S.A. 39:3-29(b); delaying traffic, N.J.S.A. 39:4-56; and failing to produce the insurance identification card, N.J.S.A. 39:3-29(c). Defendant is not challenging his conviction on these Title 39 infractions in this appeal.

[2] The decision to grant or deny an application for a stay of the revocation of a defendant's driver's license in DWI cases pending appeal is now governed by the standards established by the Supreme Court in State v. Robertson, 228 N.J. 138, 150-52 (2017).

A-0489-13T1

violated his constitutional right to a speedy trial because it took a total of 312 days, consisting of four pretrial court appearances and six non-sequential trial days, to reach a final decision. Defense counsel also claimed that unrebutted expert testimony from a toxicologist established that the arresting officer's description of defendant as "being passed out behind the wheel of a car, with vomit on him, was consistent with someone suffering from carbon monoxide poisoning." Stated differently, counsel argued that the State did not prove, beyond a reasonable doubt, that defendant was under the influence of alcohol at the time of his arrest.

After conducting a de novo review of the record developed before the municipal court, Rule 3:23-8(a)(2), and applying a deferential standard of review to the factual findings based on a witness's credibility, State v. Johnson, 42 N.J. 146, 157 (1964), the Law Division judge found defendant guilty of DWI. Applying the four-factor balancing analysis in Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101, 117 (1972), the judge also rejected defendant's speedy trial argument. The Law Division judge imposed the same sentence as the municipal court and "stayed all fines/penalties pending appeal," but ordered that the ignition interlock device remain installed pending and during the appeal.

A-0489-13T1

Defendant filed a Notice of Appeal to this court on September 27, 2013. On September 19, 2014, this court, on its own motion, entered an order pursuant to Rule 2:5-3(f) remanding the matter to "the Borough of North Arlington Municipal Court for reconstruction of the proceedings on April 26, 2012." We directed the municipal court to complete this task within sixty days. After the reconstruction of the record was completed, we directed the Law Division to reconsider its earlier decision.

On May 8, 2015, defendant filed a motion requesting that we enforce our order dated September 19, 2014. On May 27, 2015, we granted defendant's unopposed motion, remanded the matter to the Law Division, and directed the "reconstruction of the record . . . be completed within thirty (30) days[.]" We stated that we would grant no further extensions, and again remanded the matter to the Law Division for reconsideration.

After receiving the reconstructed record from the municipal court, Judge Susan J. Steele, who was then the Presiding Judge of the Criminal Part,[3] conducted a second trial de novo on January 20, 2016. Judge Steele was not the judge who decided this case in August 2013. Before hearing the arguments of counsel, Judge Steele comprehensively reviewed the procedural history of the case and noted that proceedings before the municipal court were delayed

---

[3] Judge Steele has since retired.

a number of times due to technical problems with the audio recording equipment. The actual trial was also adjourned at defense counsel's request due to the unavailability of a witness. Against this procedural backdrop, Judge Steele heard the arguments of counsel and reserved judgment.

The case reconvened on February 2, 2016, at which time Judge Steele placed her factual findings on the record and explained the legal basis for finding defendant guilty of DWI. Based on the record developed before the municipal court, Judge Steele found that at approximately 6:00 p.m. on November 20, 2011, defendant drove to a restaurant located in the Town of Kearny in Hudson County to eat "his first meal of the day[.]" According to defendant, he also "consumed five mugs of wine," which he described as "ten ounce mixed drinks, consisting of half wine and half Seven-Up."

At approximately 8:00 p.m., James O'Connor, the Chief of Police of the Township of Lyndhurst in Bergen County, arrived at the restaurant with a friend. O'Connor was off-duty and had gone to the restaurant to eat dinner. O'Connor testified as a witness for the State. Defendant did not know O'Connor before he encountered him at the restaurant. The two men started talking while seated at the restaurant's bar. O'Connor testified defendant struggled to sit on the bar stool and had a "flushed face,

bloodshot watery eyes, and slurred speech." Defendant left the restaurant at approximately 10:00 p.m. Judge Steele found that after leaving the restaurant, defendant sat in his car for about fifteen minutes talking to a friend on his cellphone. When the conversation ended, defendant drove away.

North Arlington Police Officer Joseph Rinzivillo testified that at approximately 10:46 p.m. on November 20, 2011, he was driving his marked patrol car southbound on Ridge Road when he "observed the defendant, Mr. Marinho, asleep at the wheel at a red light . . . with his head to the steering wheel." When the traffic light turned to green, Rinzivillo stepped out of the patrol car, walked toward defendant's car, and knocked "on the window several times, trying to get Mr. Marinho's attention. He would not wake up. [Rinzivillo] then proceeded to open Mr. Marinho's door and he woke up." Rinzivillo testified that he "smelled a strong odor of alcohol emanating from [defendant's] breath." Rinzivillo then placed defendant's car in park.

Rinzivillo described what happened next:

> Q. You put the vehicle in park.
>
> A. Put his vehicle in park. He was out of it.
>
> Q. Okay. Did he say anything at that time to you?
>
> A. He did not say anything to me.
>
> . . . .

A-0489-13T1

He just woke up stunned.

Q. Okay.  Did you make any other observations?

. . . .

A. I saw some vomit on his shirt and a strong odor of alcoholic beverage emanating from his breath.  The whole car was really, really strong.

. . . .

I asked Mr. Marinho has he been drinking tonight.  He told me yes, he has.  He was out to dinner in Kearny.  I asked him what he [was] drinking and he said wine, mugs of wine.

Q. Okay.  At some point in time did you ask the defendant to step out of his vehicle?

A. Yes, I did.

. . . .

Q. Tell me what happened when the defendant came out of his car?

A. He was swaying, staggering and slurring his speech as I was instructing him to do some field sobriety testing.

Rinzivillo asked defendant to perform a field sobriety test. He directed defendant to walk nine steps heel-to-toe with his hands to the side of his body.  When defendant reached the ninth step, Rinzivillo asked defendant to "turn around and pivot and walk back nine steps in a straight line[.]"  Although he attempted to perform the test, Rinzivillo testified defendant was unable to follow the instructions.  "He was swaying back and forth, having

his arms trying to balance himself.  And for his safety, as well as mine, I had to stop the test."  Based on these observations, Rinzivillo concluded defendant was "highly intoxicated" and placed him under arrest for DWI.  According to Rinzivillo, defendant "kept apologizing" and said he had had "too much to drink."

Rinzivillo transported defendant in his patrol car to the North Arlington Police Station.  At the station, Rinzivillo read defendant his Miranda[4] rights.  Judge Steele found defendant voluntarily consented to waive his Miranda rights and admitted to Rinzivillo "that he had consumed five mugs of wine."  Judge Steele found defendant "cried constantly," admitted he drove his car while intoxicated, stated that he "had too much to drink," apologized to the officers, and "begged for the police to release him."

Defendant claimed he was disoriented and disheveled during the arrest because he inadvertently inhaled carbon monoxide gas that had seeped into the interior of his car from a defective exhaust pipe.  According to defendant, he discovered this alleged problem when he took his car to a mechanic on November 28, 2011, eight days after his arrest.  The mechanic used "a dual smoke detector carbon monoxide detector" he purchased from Home Depot

---

[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

to detect the presence of the gas in the interior compartments of the car.

Judge Steele found the mechanic "placed the device on the trunk of the car and determined that the car had an exhaust leak in the trunk which he repaired."  At trial, defendant called Dr. Gary Lage to establish the physiological effects of inhaling carbon monoxide gas.  Dr. Lage had a Bachelor of Science in Pharmacy from Drake University, a Master of Science in Pharmacology from the University of Iowa, and a Doctor of Philosophy in Pharmacology from the University of Iowa.  The municipal court judge admitted him as an expert in the field of toxicology.

Dr. Lage described the toxicological effects of inhaling carbon monoxide:

> At low levels it'll cause dizziness, vomiting. At higher levels it'll cause nausea and lack of coordination.  At higher levels it'll cause sleepiness and even coma, and ultimately death, and it's not so much the level of carbon monoxide in the air, but the level of carboxyhemoglobin.  That's the molecule that's formed once it binds with hemoglobin.  As the concentration of carbonxyhemoglobin goes up, the toxic effects go up.
>
> Q. And is there any way for a person to notice that they are inhaling carbon monoxide?
>
> A. No.  Just like we don't recognize carbon dioxide, you don't recognize carbon monoxide. It has no odor.  So there's no way to notice it.  That's why we all have carbon monoxide detectors in our houses, is because there's . . . no early warning of the effects.

A-0489-13T1

Q. And if someone inhaled carbon monoxide, . . . setting aside the cases of fatality, can it cause someone to pass out for instance?

A. Yeah. Sleepiness, dizziness, ultimately coma, or passing out, whatever word you want to put to it.

Dr. Lage made clear on cross-examination that his opinion concerning defendant's exposure to carbon monoxide gas was predicated on the veracity of the mechanic's report, which stated: "I believe that carbon monoxide could have gotten into the passenger compartment from the trunk through the armrest in the backseat that when placed down leads directly into the trunk." Dr. Lage conceded he did not know whether the armrest was up or down at the time defendant was driving his car on November 20, 2011. However, Dr. Lage indicated that carbon monoxide gas could have seeped into the vehicle's passenger compartment even if the armrest was down "because it's not going to be a complete seal."

Judge Steele made the following findings with respect to Dr. Lage's[5] testimony:

> The doctor, the toxicologists Dr. Lage, was fully conversant on the physical effects of carbon monoxide poisoning. However, he relied on the mechanic's report in coming to the conclusion that defendant's behavior was likely the result of exposure to carbon monoxide rather than alcohol. He did not have

---

[5] The transcript of Judge Steele's oral opinion contains a typographical error in the spelling of this witness' name. We use the correct spelling.

the opportunity, unfortunately, to observe the defendant at the relevant time. He did not have the benefit of blood tests potentially supporting his theory. And his and the mechanic's theory of how the gas found its way into defendant's car I find to be speculative at best. He seemed to hypothetically say if this then that, if this then that without having full information in coming to his conclusions.

Thus the expert's testimony provides only an unsupported theory which in this [c]ourt's opinion does not overcome the cumulative evidence to the contrary.

Judge Steele found defendant guilty of DWI based on Officer Rinzivillo's testimony, which she characterized as "replete" with observations supporting his opinion that defendant was under the influence of alcohol. Judge Steele found that at the time Officer Rinzivillo arrested defendant, he had slurred speech, vomit on his shirt, and was unable to walk unassisted. Defendant was also unable to

locate any of the necessary documents other than his driver's license. Packaging that with his statements at the police station that he had had too much to drink, along with the fact that he was found asleep at the wheel, and most importantly, the fact that there is a strong smell of alcohol on the defendant's breath lead me to believe that there is overwhelming evidence the defendant was under the influence of alcohol and that the State met its burden in proving that at trial.

Judge Steele also rejected defendant's speedy trial argument. Applying the four-factor balancing analysis from Barker v. Wingo,

supra, Judge Steele acknowledged that the case had "a circuitous course over many months[.]" She found that the delays were caused by "a host of reasons," including, in part, delays in providing discovery and failure of the court's audio recording system. Although she did not attribute the delays to defendant "in any way," Judge Steele found the length of delay was not "unreasonable."

Judge Steele also found a lack of evidence showing defendant suffered undue prejudice attributable to the delay. Both defendant and the State relied on State v. Cahill, 213 N.J. 253 (2013), in which the Supreme Court acknowledged that in 1984:

> Chief Justice Wilentz issued a directive stating that offenses under N.J.S.A. 39:4-50 (operation of an automobile under the influence of alcohol or drugs) and N.J.S.A. 39:4-50a (refusal to submit to a chemical test) "must be disposed of within [sixty] days of filing. "Administrative Directive #1-84 (July 26, 1984) (Directive #1-84). Directive #1-84 explained that the sixty-day period was designed to reduce the backlog of those cases and to protect the public from the havoc wrought by intoxicated drivers. Ibid. Directive #1-84 also emphasized the sixty-day period was a goal, did not replace "the traditional guidelines established through case law for dismissals based on lack of a speedy trial," and should not be invoked at the expense of other court efforts to achieve speedy disposition "of more serious disorderly persons complaints." Ibid.
>
> [Id. at 269.]

Citing <u>Cahill</u>, Judge Steele correctly noted that Directive #1-84 established a "dispositional goal" and the Court in <u>Cahill</u> made clear that it "has steadfastly declined to adopt a bright-line try-or-dismiss rule." <u>Id.</u> at 270. In short, Judge Steele was "not persuaded" that defendant's due process right to a speedy trial was violated.

Against this record, defendant now raises the following arguments.

> POINT I
>
> THE COURT BELOW ERRED IN BALANCING THE SPEEDY TRIAL FACTORS AND THE CHARGES AGAINST FRANKLIN MARINHO SHOULD HAVE BEEN DISMISSED BECAUSE HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL WAS VIOLATED.
>
> POINT II
>
> THE COURT BELOW ERRED IN FINDING FRANKLIN MARINHO GUILTY OF DWI BEYOND A REASONABLE DOUBT BY DISREGARDING THE UNREBUTTED DEFENSE EXPERT TESTIMONY AND THE FACT THAT FRANKLIN MARINHO'S UNCONSCIOUS STATE AND DETERIORATED CONDITION WAS MORE CONSISTENT WITH CARBON MONOXIDE POISONING THAN WITH BEING UNDER THE INFLUENCE OF ALCOHOL.
>
> POINT III
>
> FRANKLIN MARINHO'S DWI CONVICTION SHOULD BE OVERTURNED BECAUSE THE LAW DIVISION JUDGE ERRED IN CONSIDERING AN IMPROPERLY ADMITTED ALLEGED STATEMENT AGAINST INTEREST BY MR. MARINHO THAT WAS NOT DISCLOSED TO THE DEFENSE PRIOR TO TRIAL AND WHICH MR. MARINHO WAS PREVENTED FROM REBUTTING THROUGH HIS EXPERT WITNESS.

13

N.J.S.A. 39:4-50(a) prohibits the operation of a motor vehicle under the influence of intoxicating liquor. The phrase "under the influence" generally means a substantial deterioration or diminution of the mental faculties or physical capabilities of a person. State v. Tamburro, 68 N.J. 414, 420 (1975). In cases involving intoxicating liquor, "under the influence" means a condition that affects a motorist's judgment or control "as to make it improper for him to drive on the highway." Johnson, supra, 42 N.J. at 165. After carefully reviewing the record developed in this case, we affirm substantially for the reasons expressed by Judge Steele in her oral opinion delivered from the bench on February 2, 2016. Judge Steele's factual findings are well-supported by the competent evidence in the record. State v. Cryan, 363 N.J. Super. 442, 454-55 (App. Div. 2003).

We nevertheless briefly address defendant's speedy trial argument. In Cahill, the Court noted that "prejudice is assessed in the context of the interests the right [to a speedy trial] is designed to protect. Those interests include prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." Cahill, supra, 213 N.J. at 266 (citations omitted).

14                                                    A-0489-13T1

Here, counting from the date of defendant's arrest, 312 days passed before the municipal court judge provided his reasons for finding defendant guilty. As is the case in the overwhelming number of DWI cases, defendant was released immediately after the police cataloged his arrest. However, unlike most cases in which a defendant is convicted of DWI for a third time, defendant has retained his driving privileges, has not served a single day of his 180-day sentence, and has not paid any of the mandatory fines or penalties imposed by the court. Given the overwhelming evidence of intoxication that Judge Steele correctly found in support of defendant's conviction, any delay in bringing this case to conclusion has inured to defendant's benefit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0489-13T1