# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2000-18T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

VIDROLE MONACE, a/k/a
JAMES MONACE,

      Defendant-Appellant.

_____

Argued telephonically May 19, 2020 –
Decided July 14, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 13-08-1946, 15-06-1487 and 18-02-0646.

Kevin Walker, First Assistant Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin Walker, of counsel and on the briefs).

Emily M. M. Pirro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting

Essex County Prosecutor, attorney; Emily M. M. Pirro, of counsel and on the brief).

PER CURIAM

After a jury found defendant guilty of the 2012 sexual assault of his then sixteen-year-old niece, G.G. (Gwen),[1] the trial court sentenced defendant to an aggregate eleven-and-a-half-year prison term, with an eight-and-a-half-year parole bar, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant now appeals from the judgment of conviction entered by the Law Division on December 4, 2018.

On appeal, defendant argues: 1) his right to a speedy trial was violated; 2) the judge erred by denying his motion for a judgment of acquittal on count four; 3) certain testimony of the Sexual Abuse Nurse Examiner (SANE) should not have been admitted; 4) the judge violated his due process and compulsory process rights by improperly interfering with his decision to testify; 5) the assistant prosecutor improperly asked defendant to vouch for the credibility of Gwen; and 6) the judge imposed an excessive sentence. Following our review of the record and applicable law, we reject these arguments and affirm.

---

[1] Because of the sexual nature of the crimes, we use initials and a pseudonym to protect the privacy of the victim. R. 1:38-3(c)(12).

# I

In light of defendant's speedy trial claim, we begin with a summary of the procedural history of this case to provide context for the more than five-year lapse between defendant's arrest and trial.

On August 12, 2013, an Essex County Grand Jury returned Indictment No. 13-08-1946 charging defendant with first-degree sexual assault (vaginal penetration and "actor had supervisory or disciplinary power"), N.J.S.A. 2C:14-2(c)(3)(b) (count one); second-degree endangering welfare of a child, N.J.S.A. 2C:24-4(a) (count two); first-degree sexual assault (digital penetration and "actor had supervisory or disciplinary power"), N.J.S.A. 2C:14-2(c)(3)(b) (count three); second-degree endangering welfare of a child, N.J.S.A. 2C:24-4(a) (counts four and five); fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b)(3)(b) (counts six and seven); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count eight).

On June 29, 2015, superseding Indictment No. 15-06-1487 added five additional counts charging defendant with second-degree witness tampering, N.J.S.A. 2C:28-5(a)(1) (count nine); third-degree terrorist threats, N.J.S.A. 2C:12-3(a) (count ten); third-degree hindering apprehension or prosecution,

N.J.S.A. 2C:29-3(a)(3) (counts eleven and twelve); and fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(2) (count thirteen).

Almost three years later, on February 26, 2018, a second superseding indictment, Indictment No. 18-02-0656, dropped the five supplemental counts and charged defendant with fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) and N.J.S.A. 2C:14-2(c)(3)(c) (count one); endangering welfare of a child, N.J.S.A. 2C:24-4(a) (counts two and seven); and second-degree sexual assault; N.J.S.A. 2C:14-2(c)(3)(c) (counts three through six).

The charges returned in the second superseding indictment alleged that defendant stood "in loco parentis" to Gwen. Later at trial, however, the State did not pursue the pseudo-parental role, and the final superseding indictment was amended to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3 and N.J.S.A. 2C:14-2(c)(1) (count one); fourth-degree child abuse, N.J.S.A. 9:6-1 and 9:6-3 (counts two and five); second-degree sexual assault, 2C:14-2(c)(1) (count three); and second-degree sexual assault by digital penetration, N.J.S.A. 2C:14-2(c)(1) (count four).

The record of defendant's January 12, 2018 motion hearing highlighted the events attributable to the delay in bringing the case to trial. During the hearing, counsel for defendant represented she was "his fifth or sixth attorney."

She explained that defendant refused to cooperate with prior counsel and remained uncooperative, while asserting additional evidence existed that all prior counsel allegedly refused to explore.

In addition to defendant's numerous counsel changes, the record shows that defendant stated his intention to accept a plea offer on three separate occasions; however, when it came time to provide a factual basis at each plea hearing, defendant failed to provide one. In December 2017 and January 2018, defendant filed various pro se motions, including a January 12, 2018 motion to dismiss for failure to indict. The State filed motions regarding a fresh complaint witness and statements made by defendant to another witness, which were resolved by June 2018.

In denying defendant's January 12, 2018 motion for failure to indict, the motion judge stated:

> I want to make the record clear . . . this matter's been dancing around since 2015, since I became a judge, and it's not a delay because of this [c]ourt. It is not a delay because of counsel. . . .
>
> The delay is because of [defendant]. . . . [H]e's been through three attorneys since I've been on this case, different prosecutors have handled this case as well . . . .
>
> This is a serious case and there's always been a – commitment on the part of the State to resolve this case based on all of the circumstances.

A-2000-18T3

On March 20, 2018, defendant again appeared before the same motion judge, who questioned him in order to rule upon his motion to represent himself. After extended questioning by the motion judge, defendant decided to continue with his trial counsel and withdrew his motion to represent himself. Trial counsel then withdrew defendant's remaining motions, including his third motion to dismiss for failure to indict.

On June 13, 2018, defendant's four-day trial commenced. On June 20, 2018, the jury convicted defendant of all five counts in the final superseding indictment. On December 4, 2018, the trial court sentenced defendant and awarded him 2089 days of jail credit.

II

We next summarize the facts elicited at trial which resulted in defendant's conviction. Defendant resided in a one-bedroom apartment in East Orange. He lived there with his wife, two children, and a nephew. Defendant and his family are natives of Haiti and primarily speak Creole.

In December 2012, Gwen immigrated from Haiti to live with her father; however, the two did not get along, so defendant's wife allowed Gwen to stay at their apartment. In the one-bedroom apartment, Gwen slept in the living room

A-2000-18T3

behind a curtain, defendant's children slept on the couch, and defendant and his wife slept in the bedroom.

On December 7, 2012, Gwen woke up to the sensation of someone fondling her from behind. When she rolled over, she recognized defendant, who proceeded to reach his hand down the front of her pajama pants and touch her vagina. Gwen told defendant she would tell his wife what he did, but defendant told her that no one would believe her. On December 11, 2012, Gwen told her aunt, R.G., that defendant touched her inappropriately. R.G. did not believe her.

On December 12, 2012, defendant woke up Gwen in the middle of the night and whispered, "[N]o one will know what we are going to do." Defendant then got on top of Gwen, covered her mouth with one hand, and proceeded to pull off her skirt and underwear, with the other. Defendant then penetrated Gwen with his hands and penis, ejaculating inside of her. Afterward, defendant ordered Gwen to take a bath.

Gwen again called R.G. and requested she come over. R.G. drove to defendant's apartment early that morning; defendant was not present when she arrived. There, Gwen told R.G. about the second assault and R.G. called defendant, requesting he return to the apartment. Defendant denied having sex with Gwen.

A-2000-18T3

In response to defendant's denial, R.G. stated her desire to call the police "to make everything straight[.]" Defendant then admitted to having sex with Gwen. Before R.G. engaged defendant, she had phoned her sister, who remained on the line throughout the confrontation. At some point, R.G.'s sister called the police.

After the police arrived, Gwen provided a statement to the responding officers and EMS transported her to a local hospital. R.G. accompanied Gwen and translated for her. Marti Hayducka, a certified SANE nurse, examined Gwen at the hospital. Gwen provided a vaginal sample, anal swab, cervical swab, and her underwear for testing. The tests revealed defendant's DNA matched the semen found in Gwen's vaginal sample and underwear. Police arrested defendant on March 16, 2013.

As noted, the jury convicted defendant of all five counts contained in the final indictment. This appeal followed, with defendant presenting the following arguments:

> POINT I
>
> DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE MORE THAN FIVE-YEAR DELAY IN BRINGING HIM TO TRIAL.

A-2000-18T3

POINT II

    THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITAL ON COUNT FOUR.

POINT III.

    THE TESTIMONY OF THE SANE NURSE ON REDIRECT WENT FAR BEYOND WHAT THE RULES OF EVIDENCE PERMIT.

POINT IV.

    IMPROPER JUDICIAL INTERFERENCE WITH DEFENDANT'S DECISION TO TESTIFY VIOLATED DEFENDANT'S DUE PROCESS AND COMPULSORY PROCESS RIGHTS. (NOT RAISED BELOW)

POINT V

    IT WAS IMPROPER FOR THE PROSECUTOR TO REPEATEDLY ASK DEFENDANT TO VOUCH FOR THE CREDIBILITY OF ANOTHER TRIAL WITNESS. (NOT RAISED BELOW)

POINT VI.

    DEFENDANT'S SENTENCE IS EXCESSIVE.

A. Speedy Trial Claim.

We turn first to defendant's contention that his right to a speedy trial was violated due to the more than five years that elapsed between his arrest and trial.

A-2000-18T3

Defendant argues that we should reverse his conviction, contending a proper application of the four-part analysis established by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), mandated the dismissal of his indictment. Alternatively, defendant argues this court should remand the matter to the trial court for a full hearing and further consideration of his speedy-trial claim.

The Sixth Amendment to the United States Constitution guarantees a defendant's right to a speedy trial and that right is applied to the states by the Due Process Clause of the Fourteenth Amendment. State v. Cahill, 213 N.J. 253, 264 (2013) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). "The constitutional right . . . attaches upon defendant's arrest." State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (alteration in original) (quoting State v. Fulford, 349 N.J. Super. 183, 190 (App. Div. 2002)).

The State owes the defendant a duty to promptly bring his or her case to trial and avoid excessive delays. Ibid. At trial, the defendant bears the burden of establishing a violation of his or her speedy trial right. Id. at 9.

In State v. Cahill, our Supreme Court reaffirmed that the four-factor balancing analysis of Barker "remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial." 213

10

N.J. at 258.  Barker identified four non-exclusive factors a court should consider when evaluating a speedy-trial claim: length of the delay, reasons for the delay, assertion of the right to a speedy trial by the defendant, and prejudice to the defendant.  Id. at 530-33.  Not all four factors are necessary or sufficient "to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  Id. at 533.  Each application for dismissal based on speedy trial principles is fact-sensitive and requires "a case-by-case analysis rather than a bright-line time limitation."  Cahill, 213 N.J. at 270.

When the delay exceeds one year, a court presumptively should analyze all of the Barker factors.  Id. at 265-66.  Legitimate delays, "however great," will not violate the defendant's right to a speedy trial, unless those delays specifically prejudice the defense.  Doggett v. United States, 505 U.S. 647, 656 (1992).  Delays attributable to the defendant do not support a speedy trial violation and such delays are subtracted from the total calculus.  United States v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014) (citing United States v. Battis, 589 F.3d 673, 680 (3d Cir. 2009)).  Naturally, purposeful delay tactics weigh heavily against the State.  Barker, 407 U.S. at 531.

Applying these factors to this matter, we are not convinced defendant was denied his right to a speedy trial.  The record shows defendant's arrest occurred on March 16, 2013, and his trial began on June 13, 2018.  Defendant contends that any and all delay in his case was attributable to the State.  We disagree, finding the delay was primarily, if not entirely, caused by defendant.

As observed by the motion judge during pretrial hearings in January 2018, and evidenced by defendant's actions throughout trial, his consistent refusal to cooperate with the court and his counsel caused much of the delay.  Significantly, defendant's trial counsel was defendant's sixth[2] attorney in the case.  At one point, defendant indicated he wished to represent himself at trial; however, he withdrew the motion after it caused additional delay.  Defendant also filed numerous additional pro se motions, most lacking in merit.  Furthermore, defendant repeatedly indicated his intention to accept a plea offer, but then failed to provide the required factual basis on three separate occasions, significantly frustrating the State's efforts in bringing the case to trial.

Defendant contends the State contributed to his delay because it continued to "alter[] [its] legal theory of the case."  To the contrary, the superseding indictment added charges after defendant attempted to interfere with a witness

---

[2] Defendant's counsel confirmed this fact at oral argument before this court.

12                                           A-2000-18T3

and evidence, and the subsequent indictments attempted to streamline the case and move it forward to trial. The State's theory throughout the case remained that defendant sexually assaulted his minor niece.

We do note that defendant filed pro se motions to dismiss for a failure to indict. Nevertheless, defendant failed to show he was prejudiced by the delay in bringing his case to trial. Moreover, defendant is the primary reason for the delay. We conclude that defendant's right to a speedy trial was not violated.

B. <u>Denial of Motion for Acquittal on Count Four.</u>

We next consider defendant's contention that the trial court erred in denying his motion for acquittal on count four, sexual assault by digital penetration, N.J.S.A. 2C:14-2c(1). Defendant argues a reasonably jury could not convict him of the digital penetration count based on the trial record. Specifically, he asserts that, because Gwen required her memory to be refreshed by her five-year-old statements regarding the digital penetration before testifying, the record lacked credible evidence to find him guilty of that offense. We reject this argument, finding the record contains sufficient evidence from which the jury could find, beyond a reasonable doubt, that defendant committed sexual assault by digital penetration.

During the State's direct examination of Gwen, the assistant prosecutor questioned her regarding the sexual acts defendant performed. Although Gwen initially testified that defendant did not penetrate her digitally, she testified to that fact after her memory was refreshed by reviewing her statement to the police. After the State rested, defendant moved to dismiss count four of the indictment.

In ruling on defendant's Rule 3:18-1 motion, the judge reviewed the applicable standard in State v. Reyes, 50 N.J. 454, 458-59 (1967), and stated:

> . . . the question the trial judge must determine is whether viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and given the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonabl[y] could be drawn therefrom a reasonable juror could find [defendant] guilty of the charge beyond a reasonable doubt.
>
> Based on . . . the testimony of the victim, I find that . . . giv[ing] the evidence of the State[] the benefit of all favorable testimony as well as the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the defendant as to the charge contained in [c]ount [four] of the indictment and, therefore, the application is denied.

We review a trial court's decision to deny a motion for acquittal de novo. State v. Williams, 218 N.J. 576, 593-94 (2014) (citing State v. Bunch, 180 N.J. 534, 548-49 (2004)). Accordingly, we inquire "whether, based on the entirety of the

14

evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id. at 594 (citing Reyes, 50 N.J. at 458-59).

Under Rule 3:18-1, a court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

Here, before testifying to defendant digitally penetrating her, Gwen needed to have her recollection refreshed by reviewing the statement she provided to the police, over five years before, when she was sixteen years old. A jury "may draw logical inferences from the evidence presented to them," including direct and circumstantial evidence. State v. Cango, 211 N.J. 488, 512 (2012). The State presented the evidence to the jury after properly refreshing Gwen's memory. Defendant had ample opportunity to cross-examine Gwen and present his own evidence at trial. Gwen's refreshed recollection clearly provided an adequate basis for a reasonable jury to find defendant guilty of count four, sexual assault by digital penetration. Therefore, we find no error in the trial judge's decision to deny defendant's motion for acquittal.

C. Evidentiary Error Claims.

For the first time on appeal, defendant contends the trial court made two clear evidentiary errors by allowing both improper cross-examination and redirect testimony. First, defendant argues the State improperly questioned the SANE nurse regarding information Gwen provided her following the assault. He contends the questioning went beyond the proper scope of redirect. Second, defendant asserts the State, during its cross-examination, asked him a series of improper questions calculated to characterize Gwen as truthful.

Because defendant did not object to either line of questioning at trial and both arguments are raised for the first time on appeal, we apply a plain-error standard of review. Under that standard, a conviction will be reversed if the error was "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Macon, 57 N.J. 325, 337 (1971). As such, we must determine whether the claimed error was "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Prall, 231 N.J. 567, 581 (2018) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)) (alteration in original). In both instances, we find no clear error.

During defendant's cross-examination of the SANE nurse, counsel sought to elicit testimony highlighting the fact that her evaluation of Gwen failed to indicate

the presence of physical injury. The questioning sought to imply that Gwen fabricated her account, or that the sex was consensual. On redirect, the State questioned the SANE nurse whether Gwen gave any indication that the encounter was nonconsensual during the evaluation. In response, the SANE nurse testified that Gwen told her defendant threatened and physically restrained her during the encounter. The State's questioning of the SANE nurse fell within the proper scope of redirect examination.

As to the State's cross examination of defendant, he argues the assistant prosecutor asked him a series of improper questions in order to bolster Gwen's credibility. The State maintains the questioning was proper cross-examination, admissible to highlight the inconsistences between defendant's testimony and Gwen's testimony.

The record reflects the State did not misrepresent or mischaracterize the testimony of either party. Nor did the State seek to bolster Gwen's credibility by having defendant characterize her as truthful. Moreover, defendant did not show how either the State's questioning of the SANE nurse, or him, prejudiced his defense.

D. Judicial Interference Claim.

Defendant also contends the trial judge interfered with his right to testify, claiming he "berated and threatened" him before he testified. This argument lacks

A-2000-18T3

sufficient merit to warrant extended discussion.  R. 2:11-3(e)(2).  Our review of the record reveals the trial judge displayed considerable patience with defendant and did not berate or threaten him.  Instead, the record reflects the judge appropriately addressed defendant to confirm his decision to testify and that he had enough time to speak with his attorney regarding his testimony.  The judge further advised defendant how his testimony would proceed before the jury.

E. Excessive Sentence Claim.

Defendant argues the trial judge erred by affording undue weight to aggravating factors two, N.J.S.A 2C:44-1(a)(2) (the gravity and seriousness of the harm inflicted on the victim), and three, N.J.S.A 2C:44-1(a)(2) (the risk that defendant will commit another offense).  Defendant asserts Gwen was not seriously harmed as a result of the sexual assaults.  He also maintains the judge abused his discretion in finding factor three because he had no prior record and is unlikely to reoffend.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard."  State v. Jones, 232 N.J. 308, 318 (2018).  In reviewing a sentence, we must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the

18

guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

As to finding aggravating factor two applied, the judge clearly did not abuse his discretion. The judge noted the difficulty Gwen encountered in testifying, which reflected "the gravity and seriousness of the mental and emotional harm [defendant] inflicted upon the minor victim," and found the record reflected defendant's knowledge of her vulnerability. Competent credible evidence in the record established that defendant forcibly assaulted his then sixteen-year-old niece, who lived with him at the time. Not only did defendant sexually assault a family member under his care, he tried to intimidate her when he told her, "[N]obody will believe you." In addition to its physical nature, the assault will undoubtedly leave Gwen with lasting psychological harm, evidenced by her visible emotion in recalling the traumatic events at trial.

In finding factor three applied, the trial judge noted that defendant showed no remorse and maintained his refusal to accept any responsibility for his actions. Defendant contends the judge's finding inappropriately penalized him for exercising his trial right. We disagree. Throughout trial and at sentencing, defendant continued to deny any wrongdoing, telling the judge at his sentencing hearing, "I didn't do anything wrong." Rather than accept responsibility for his own conduct, defendant instead chooses to place blame on his multiple attorneys and the criminal justice system, notwithstanding the compelling DNA evidence in the case. The judge's finding of factor three was supported by the record.

We are satisfied the trial judge properly identified and weighed the appropriate aggravating and mitigating factors in sentencing defendant. We discern no sentencing error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20                                                              A-2000-18T3