**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3758-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MUHAMMAD UMER,

      Defendant-Appellant.

_____

          Submitted April 28, 2021 – Decided May 21, 2021

          Before Judges Alvarez and Geiger.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. 01-2020.

          Frederick P. Sisto, attorney for appellant.

          Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Muhammad Umer appeals from his conviction following a trial de novo in the Law Division. We affirm.

We derive the following facts from the record. On January 3, 2019, defendant was charged with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count one); disorderly persons possession of a hypodermic syringe, N.J.S.A. 2C:36-6(a) (count two); and disorderly persons possession of drug paraphernalia, N.J.S.A. 2C:36-2 (count three). On January 8, 2019, the Middlesex County Prosecutor's Office downgraded count one to disorderly persons failure to make lawful disposition of CDS, N.J.S.A. 2C:35-10(c), and all three charges were transferred to municipal court.

On January 17, 2019, defendant made his first appearance in municipal court. The case was adjourned because defense counsel had not yet received full discovery, namely the laboratory test results and the MVR video. During a June 20, 2019 status conference, the municipal prosecutor explained that even though the Prosecutor's Office received the lab report and MVR video, the report and video had not been received by defense counsel. Since discovery was forthcoming, the municipal court judge (MCJ) scheduled a status conference for July 11 and a trial date for July 18, 2019, to give the parties time to review

discovery and confer. The MCJ explained that defendant, who lived in Maryland, would not need to appear for the conference. When defendant expressed concerns that his case had been pending for almost seven months, the MCJ explained that discovery takes time.

On July 18, 2019, a different MCJ stated that "[t]he case cannot be tried today because the officer was on special training" and was told by the court administrator that "he did not have to make special efforts" to appear. The MCJ asked counsel for their positions. Defense counsel asked for "[w]hatever relief the [c]ourt wishes to give him," and the municipal prosecutor asked the court to reschedule for trial. Defendant complained that the case was "taking a toll on [him] professionally, physically and emotionally, and family[]wise." After explaining to defendant that she understood he lived out of state, the MCJ scheduled the next appearance for August 15, 2019, as a try or dismiss. Before doing so, she noted: "If the prosecutor is not ready to try the case, the case is dismissed [one hundred] percent."

Defendant was tried on September 5, 2019. Defense counsel made no pretrial applications and made no objections to any of the documents offered into evidence by the State. Before trial commenced, the State identified two documents as evidence, an evidence receipt (S-1) and a lab report (S-2). Defense

counsel explained that he had "[n]o issue as to chain of custody" concerning the substances identified in the documents. He also explained that he strongly suspected he would not object to their admission.

Woodbridge Township Police Officer Corey Oberberger testified as the sole witness for the State. In response to several leading questions, he confirmed that he had five years' experience as a patrol officer and had training and experience in narcotics investigations.

On January 3, 2019, he was on routine patrol in a marked vehicle and wearing a uniform. At about 12:42 a.m., he pulled into the parking lot of the Woodbridge Travelodge Motel because he knew from his experience it "is a high crime area." Oberberger stated that he had "made multiple narcotic arrests in that parking lot . . . ." He estimated he had responded "well over [twenty]" times to that location.

As he entered the parking lot, Oberberger saw an occupied Hyundai with Maryland license plates parked in the rear of the lot. Oberberger explained the Hyundai drew his attention because it was "parked in the back part of the parking lot" despite other "open spots closer to the building," that was "taking up two parking spots."

4

Oberberger exited his patrol vehicle and walked toward the Hyundai. A male, later identified as defendant, was sitting in the driver's seat. Although the lighting was dim, Oberberger was still able to clearly see into the vehicle, which was "packed to the brim with items."

Upon reaching the vehicle, Oberberger introduced himself and illuminated the interior of the Hyundai with flashlight. Oberberger observed an unzipped red case on defendant's lap, which contained a bag of crystalline material, a blue glass pipe, and a cut straw with suspected residue on it. When defendant realized the presence of the officer, he shoved the items on his lap between the seat and the driver's side door.

At this point, the prosecutor asked if Oberberger needed to refresh his recollection by looking at his report; Oberberger answered, "yes." The prosecutor marked the officer's incident report for identification as S-3 without objection. Oberberger confirmed that he recognized the document. After reviewing the report to refresh his recollection, Oberberger testified that he saw "a cut straw, a bag containing a crystal[-]like substance[,] and a blue pipe."

Oberberger confirmed he was experienced with narcotics because he conducted many narcotics investigations, executed search warrants, and took multiple classes on narcotics. Based on his training and experience, Oberberger

5

knew that glass pipes are generally used to ingest crystal methamphetamine and cut straws are used to snort narcotics.

Defendant was asked to exit his car. After back-up arrived, Oberberger searched defendant's vehicle, where he found two hypodermic syringes and two spoons with residue underneath the radio inside the center console and two pills inside the red case. These items were listed in the property report. At that point, the prosecutor introduced the property report (S-4) to refresh Oberberger's recollection, which Oberberger confirmed he prepared. The property report listed all the items that he recovered from defendant's vehicle, including the red case that defendant had hidden between the driver's seat and the door.

In accordance with standard departmental procedures, Oberberger turned over the seized items to the shift commander, who in turn placed them in a storage locker. The evidence receipt (S-1) reflected that the items had been checked into evidence and required testing. After Oberberger testified that evidence receipts were kept in the ordinary course of business, the State moved the evidence receipt into evidence without objection.

The crystalline material was sent to the lab and tested positive for methamphetamine. The lab report (S-2) was admitted into evidence without objection. Defendant stipulated to the chain of custody.

A-3758-19

On cross-examination, Oberberger noted that defendant made no incriminating statements before, during, or after the arrest. When asked where he found the hypodermic syringes, the officer testified that he found them "[o]n the center console" as opposed to "[i]n the center console." The officer then clarified that the syringes were not inside the console but instead in "a little cubby underneath the radio . . . in the vicinity of [the] center console" where a shift knob would be located. He noted that when he approached the vehicle, defendant was awake.

Defense counsel then asked, "Did [defendant] ever hand you anything, from his hand to your hand coming from any part of the interior compartment of that vehicle?" Oberberger answered, "I think just his license." After cross-examination ended, the State rested.

At this point, the MCJ confirmed that the evidence receipt (S-1) and lab report (S-2) were admitted in evidence, but the incident report (S-3) and property report (S-4) were only marked for identification and had only been utilized to refresh the officer's recollection.

Defendant testified on his own behalf. He stated that he had driven from Washington, D.C. to New Jersey that night and that his brother lived about a mile from the motel. He claimed that he had worked the day before as a Lyft

and Uber driver, was studying at the same time, and was tired and pulled into the motel's parking lot to rest. Defendant explained that he picked a dark spot to park that was close to his brother's house.

Defendant testified that when the officer approached him, he was sleeping and was awakened by the officer shining a flashlight inside his vehicle. By the time the officer reached his vehicle, he was looking down at his cell phone on his lap. The officer asked him why he was in the parking lot and inquired about a red case that was sitting on a pile on the passenger seat, which defendant handed over. He claimed he did not know how the red case ended up in his vehicle, explaining that an Uber or Lyft customers could have left it behind.

Defendant testified that he had "no clue" what was inside the "bag." He said he dropped the bag in the process of retrieving it for the officer, so the officer asked him to step out of the vehicle. He claimed he had the pills because he is a physician. The prosecutor waived cross-examination and defense counsel rested. Each waived summation.

The MCJ found the officer's version and testimony to be accurate, truthful, and credible and that he testified with veracity. In contrast, the MCJ found defendant's testimony incredible based on "his body language[,] demeanor, the way he testified, [and] the information he" provided. The judge found

8

defendant's version to be "preposterous" and unbelievable. The judge noted that the bag "must have been in plain view."

The judge made detailed findings of fact on the record. In finding defendant guilty of all three charges, the MCJ considered the evidence receipt and the lab report, which confirmed that the clear small bag contained methamphetamine.

Defense counsel inquired about enrolling defendant in a conditional discharge program. Upon checking defendant's eligibility, the MCJ discovered and informed defense counsel that defendant had pending indictable drug charges in Ocean County. The MCJ adjourned the case for two weeks to give counsel the opportunity to investigate and discuss the conditional discharge program with defendant before making a final decision

Before adjourning the case, the MCJ imposed a fine, court costs, and various penalties and assessments. The court also heard the parties' arguments concerning license suspension. Defense counsel requested the court to not suspend defendant's license, as it would cause him undue hardship, because his income depends on his ability to drive. Defendant explained that he drove part-time for Uber and Lyft, his friends paid him to drive them around, and he worked for a retail shop, which requires him to drive to different locations. Defendant

explained that he had not worked for Uber since January 2019, and that he would have difficulty finding another job, had no savings, and had bills to pay.

The State suggested the court impose a six-month suspension on count one. The MCJ agreed, suspending defendant's driving privileges in New Jersey because he found no hardship existed.

The MCJ then adjourned the matter for September 25, 2019, to give defendant the opportunity to prepare his application for the conditional discharge program. On that date, the case was postponed because defense counsel and the trial judge were unavailable. On November 11, 2019, the case was postponed because trial counsel and the trial judge were again unavailable.

On December 11, 2019, the State informed the court that defendant was eligible for conditional discharge. The MCJ asked defendant if he wished to apply for the conditional discharge program, and defendant responded in the affirmative. The MCJ imposed a one-year term of conditional discharge but no fine. Court costs and various penalties and assessments were also imposed.

Defendant, who was then represented by different counsel, appealed to the Law Division, and requested a stay of sentence. Counsel confirmed that defendant's trial counsel preserved none of the issues raised on appeal. Therefore, the court applied a plain error standard of review.

 A-3758-19

At the beginning of the hearing, counsel acknowledged that defendant presented no evidence during trial concerning the exemption for possession of syringes. Instead, defendant briefly mentioned that he was a physician.

Before placing his decision on the record, the judge explained that he reviewed the municipal court appeal under a de novo standard of review pursuant to Rule 3:23-8(a)(2). In doing so, he gave due deference to the municipal court's credibility determinations.

The judge agreed with the MCJ's credibility findings. He explained that the officer provided straightforward answers without embellishment, he was not afraid to make concessions, and he even admitted to details that did not necessarily benefit the prosecution. The judge found that the officer's version of events made more sense despite any minor contradictions.

In contrast, the judge found defendant's testimony was "not believable," including defendant's statement that he "had no idea what was in his car." The judge found defendant's claim that a Lyft or Uber passenger left the drugs and paraphernalia at that location in the car to be "simply unbelievable." The judge then made detailed factual findings that largely mirrored the MCJ's findings.

Based on those findings, the judge found defendant guilty on all three counts. As to count one, the judge found defendant guilty beyond a reasonable

11

doubt and explained that he had "no doubt that [defendant] knowingly possessed the drugs, methamphetamines[,] and failed to surrender it to police." As to count two, the judge found beyond a reasonable doubt that defendant possessed the syringe. He stated:

> [Defendant] attempted to shield himself by saying he [was] a doctor and that he qualifie[d] for an exception allowing doctors to possess syringes. The record does not support this assertion. Nor does it support the self-serving statement that he made that he [was] studying to be a doctor. Moreover[,] while [defendant] says he properly purchased the syringe through a pharmacy, nothing in the record supports this assertion either. In fact, the circumstances, including his possession of illegal drugs, the possession of a cut straw and the possession of spoons used for drugs suggest the opposite. Again, I have no doubt that he violated this statute.

As for count three, the judge found beyond a reasonable doubt that defendant possessed drug paraphernalia, namely cut straws, spoons, and a syringe. The judge noted that "[t]hese items are commonly used by those involved in drugs. That [defendant] possessed the types of drugs commonly used with these items bolsters my conclusion."

The judge noted that defendant raised the following evidentiary issues: (1) Oberberger's testimony that the parking lot was a high crime area was irrelevant and prejudicial; (2) the prosecutor asked leading questions; (3)

12

Oberberger "parroted his report under the guise of using it to refresh his recollection"; (4) the prosecutor presented cumulative testimony; (5) Oberberger parroted the statute and thereby improperly opined defendant was guilty.

The judge noted trial counsel failed to preserve the issues for appeal. He concluded that none of these evidentiary issues constituted plain error because "they [did] not have the capacity to lead to an unjust result. The evidence here was straight forward. In fact, there's no dispute at all about many key facts."

As to defendant's assertion that testimony about the motel's parking lot being a high-crime area was irrelevant and prejudicial, the judge explained that he did not consider that testimony in rendering his decision. As for defendant's claim that the officer read directly from his report, the judge found that defendant's confrontation rights were not violated because the "report was not read verbatim and was not admitted into evidence."

The judge also noted that trial counsel's failure to make any objections and alleged ineffective representation would be appropriate for post-conviction relief. The judge emphasized that defendant's criticism of his trial attorney, namely his trial attorney's stipulations and failure to review discovery with him, would also be appropriate for a post-conviction relief application.

13

Furthermore, the factors enumerated in State v. Cahill, 213 N.J. 253, 264 (2013), weighed against dismissing defendant's complaint based on speedy trial concerns. The delay was not lengthy, and the case required discovery. Although there were a number of adjournments, nothing in the record suggested the delay was based on the desire to receive a tactical advantage or for any other improper reason. Lastly, the delay did not prejudice defendant because trial occurred within eight months. "He presented no evidence that the delay affected him emotionally or psychologically," and "nothing about the delay hurt his ability to defend himself."

The judge concluded that defendant's sentence was unclear. On June 2, 2020, he remanded the case to the municipal court for the limited purpose of clarifying the sentence imposed on each of the three counts, identifying the counts merged and the basis for merger, and to confirm whether defendant's driving privileges were suspended.

On July 17, 2020, the MCJ issued an order clarifying that counts two and three were merged with count one for purposes of the conditional discharge application. Defendant's driving privileges were not suspended, and he was ordered to pay court costs and applicable penalties and fees.

On July 28, 2020, the judge issued an order and opinion imposing the same sentence as the MCJ. He found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), and mitigating factors seven and ten, N.J.S.A. 2C:44-1(b)(7), (10), with the mitigating factors outweighing the aggravating factors.

In this appeal, defendant argues:

> I. THE LAW DIVISION SHOULD HAVE ACQUITTED [DEFENDANT] AFTER A TRIAL DE NOVO BECAUSE HE WAS DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE NEW JERSEY AND UNITED STATES CONSTITUTIONS DUE TO CUMULATIVE ERRORS MADE BY THE TRIAL COURT, PROSECUTION, AND PUBLIC DEFENDER.
>
> A. It Was Plain Error to Allow Evidence That [Defendant] Was Arrested in a "High Crime Area" Because Any Probative Value Was Substantially Outweighed By Its Risk of Undue Prejudice.
>
> B. It Was Plain Error to Allow the Vast Majority of the Prosecutor's Questions Because They Were Leading and Suggested the Answers That the Prosecutor Desired as Opposed to Open-Ended Questions That Allowed the State's Witness to Present His Own Testimony.
>
> C. It Was Plain Error to Admit Improper Opinion Evidence.
>
> D. The Judge's Decision Did Not Address the Proof Issues and Was Not Based on Substantial Credible Evidence.

E. The State's Lone Witness Undermined [Defendant's] Confrontation Rights When He Was Permitted to Read the Report that He Adopted Into Evidence Under the Guise of a "Refreshed Recollection."

F. The Prosecutor Repeatedly Made Statements to Bolster His Witness's Credibility Which [Contributed] to Plain Error that Warrants the Reversal of [Defendant's] Convictions.

G. The Prosecutor Contributed to Plain Error Warranting Reversal by Repeatedly Asking the Same Questions to Unduly Emphasize and Give Undue Weight to His Witness's Testimony.

H. [Defendant] Was Denied His Right to a Speedy Trial and Disposition Under the N.J. And U.S. Constitutions.

I. The Law Division Failed to Consider the Applicable Affirmative Defense Regarding the Possession of Hypodermic Syringes that Were Obtained from a Pharmacy.

J. The Law Division Failed to Consider the Applicable Exemption Regarding the Possession of Hypodermic Syringes by Medical Staff.

K. The Trial Judge and Law Division Erred in Not Granting [Defendant's] Request for a Stay Before Sentencing Him to the Conditional Discharge Program.

We affirm defendant's conviction substantially for the reasons expressed by Judge Robert J. Jones in his oral and written decisions. We add the following comments.

16

Notably, defense counsel made no evidence objections at trial. Accordingly, the issues he raised before the Law Division were properly reviewed for plain error. See R. 2:10-2. Judge Jones concluded that none of the evidentiary issues defendant raised constituted plain error because "they [did] not have the capacity to lead to an unjust result." We concur.

Defendant argues that the Law Division failed to consider the applicable exemptions regarding the possession of hypodermic syringes purchased from a pharmacy, N.J.S.A. 2C:36-6(b), or possessed by medical staff, N.J.S.A. 2C:36-6(c).[1] Defendant did not raise this affirmative defense during his trial in municipal court.

Before the Law Division, defense counsel acknowledged that defendant presented no evidence during the trial concerning the purchase from a pharmacy exemption. Nor did he present any evidence that he was a medical professional authorized to possess syringes. Moreover, the defense is belied by defendant's testimony that he knew nothing about the syringes. Given this lack of evidence

---

[1] "A person is authorized to possess and use a hypodermic needle or hypodermic syringe if the person obtains the hypodermic needle or hypodermic syringe by a valid prescription issued by a licensed physician, dentist or veterinarian and uses it for its authorized purpose." N.J.S.A. 2C:36-6(b). Physician, nurses, and other enumerated medical professionals, such as medical residents and hospital interns, are likewise exempt from conviction for possessing a hypodermic needle or hypodermic syringe. N.J.S.A. 2C:36-6(c).

that defendant was qualified to possess syringes under N.J.S.A. 2C:36-6(b) or (c), and his failure to timely raise this affirmative defense, we discern no error.

When considering whether a defendant has been deprived of the right to a speedy trial, courts generally consider four factors: the "length of delay, the reason for the delay, the defendant's assertion of the right and prejudice to the defendant." State v. Szima, 70 N.J. 196, 201 (1976).  Here, the trial took place within eight months of defendant's arrest.  He was not incarcerated pretrial. Discovery was not completed until the laboratory analysis of the suspected CDS was completed and the lab report was delivered.  One adjournment occurred because Oberberger was excused by the clerk.  Sentencing delays were attributable to the unavailability of defense counsel and the judge.

Defendant has not demonstrated that the delay prejudiced the defense. Nor has he shown that the State postponed the trial to gain a tactical advantage or for some other improper reasons.  Moreover, defendant did not move in municipal court to dismiss the charges due to the trial delay.  "The assertion of a right to a speedy trial is measured heavily in the speedy trial analysis." Cahill, 213 N.J. at 274 (citing Barker v. Wingo, 407 U.S. 514, 531-32 (1972)).  Given these circumstances, defendant's right to a speedy trial was not violated.

18

Equally unavailing is defendant's argument that "[t]he judge's decision did not address the proof issues and was not based on substantial credible evidence." Defendant notes that neither the trial judge nor the Law Division addressed the officer's possible bias in favor of the prosecutor. Defendant further argues that the Law Division shifted the burden of proof from the State to defendant when it reasoned that "nothing in the record corroborate[d] the notion that a Lyft passenger or Uber passenger left drugs or paraphernalia in [defendant's] car." We are unpersuaded.

The argument boils down to a disagreement with the court's credibility determinations. We generally defer "to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). No such error occurred here. Based on the Oberberger's testimony, the findings of the Law Division "could reasonably

have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). We need make no further inquiry. Ibid.

Defendant also argues that "[i]t was plain error to allow evidence that [he] was arrested in a 'high crime area' because any probative value was substantially outweighed by its risk of undue prejudice." The officer's testimony explained his reason for patrolling the area and related to the officer's experience. See State v. McLean, 205 N.J. 438, 459 (2011) (explaining that an officer's lay opinion about whether a neighborhood is a "high crime area" is "firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of [N.J.R.E.] 701").

Moreover, defendant failed to show that the probative value of the officer's testimony was substantially outweighed by the risk of undue prejudice. See N.J.R.E. 403(a); State v. Cole, 229 N.J. 430, 448 (2017). The "high crime area" testimony was not prejudicial since the Law Division judge did not consider it when making his decision. Additionally, the number of narcotics investigation and arrests the officer conducted revealed the officer's familiarity and knowledge with CDS and the area where he encountered defendant. His testimony was based on his personal knowledge and did not violate N.J.R.E.

602. Allowing the testimony was not plain error because it was not "clearly capable of producing an unjust result." R. 2:10-2.

Defendant further argues that it was plain error to allow the prosecutor's leading questions. With respect to the prosecutor's leading, compound question concerning the parking lot's lighting, the answer elicited was inconsequential because the officer proffered other testimony that the parking lot had "dimmed lighting" and that he was able to clearly see the vehicle.

Defendant argues that the court allowed the State's witness to improperly "read the report that he adopted into evidence under the guise of a 'refreshed recollection'" without laying a proper foundation. He contends that refreshed recollection testimony is not reliable.

N.J.R.E. 612 allows the use of a document to refresh the witness's memory. Before the incident report (S-3) was used to refresh the officer's recollection, the officer told the prosecutor: "I can't remember exactly what else was in there." The officer acknowledged that he needed to refresh his recollection by looking at it. After the prosecutor laid a foundation, the officer testified about the items he found in the red case after refreshing his recollection.

As for the second report, the threshold requirement of impaired memory regarding where the officer found the paraphernalia was not met before the

prosecutor provided the officer with the property report (S-4). However, the officer later struggled with remembering specifically where he found the spoons and referenced the property report (S-4) to refresh his recollection. The record reflects that the officer testified only from memory. See State v. Carter, 91 N.J. 86, 123 (1982). The Law Division reviewed this issue for plain error and concluded that it did "not have the capacity to lead to an unjust result." We discern no error.

We have considered defendant's remaining arguments and find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3758-19