**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1579-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAHDI RICHARDSON,
a/k/a JAMAR J. FREEMAN,

     Defendant-Appellant.

_____

Submitted December 3, 2024 – Decided February 26, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 14-01-0080 and 14-12-2979.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Michael Pastacaldi, Designated Counsel, on the briefs).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rahdi Richardson appeals from an order denying his motion for post-conviction relief (PCR) without an evidentiary hearing claiming ineffective assistance of counsel. He alleges counsel's errors resulted in his guilty plea to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4a(1); first-degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); first degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) and second-degree aggravated assault, N.J.S.A. 2C:12-1b(1). We affirm based on the cogent oral decision by Judge Thomas A. Callahan, Jr.

## I.

The following factual history is taken from the record below. During the period between June 15, 2013 and July 13, 2013, defendant committed two robberies involving different victims. The first incident was a robbery of Duquan Baskin. During the robbery, defendant threatened Baskin with an unregistered handgun and then shot at Baskin after Baskin shot at defendant. The second robbery involved Ibin Jones. Defendant robbed Jones at gunpoint and shot him. During the incident with Jones, two other people accompanied defendant—Jamel Brown and Desmond Sanders. Sanders was named a

2

codefendant in the second robbery due to his involvement. Defendant and Sanders were cellmates while awaiting trial. On August 30, while still confined, there was an altercation between defendant and Sanders. Defendant admitted to instigating the fight and strangling Sanders, who died from asphyxiation.

On January 10, 2014 a grand jury entered two indictments against defendant alleging a multitude of charges. Under Indictment 14-01-0080 (Indictment 0080) related to the two robberies, defendant was charged with second degree conspiracy; first-degree robbery; second-degree unlawful possession of a weapon; second-degree possession of a weapon for an unlawful purpose second-degree aggravated assault second-degree conspiracy; first degree robbery; second-degree unlawful possession of a weapon; second-degree possession of a weapon for an unlawful purpose; second-degree aggravated assault; first-degree attempted murder; first-degree attempted murder; third-degree pointing a gun at or in the direction of a law enforcement officer; two counts for third-degree point a gun at or in the direction of a law enforcement; third degree receiving stolen property; second-degree unlawful possession of a weapon; second-degree possession of a weapon for an unlawful purpose; third-degree possession of a controlled dangerous substance; third-degree possession of a controlled dangerous substance with the intent to distribute; second-degree

possession of a controlled dangerous substance with the intent to distribute within 1000 feet within a school; third degree resisting arrest contrary to; fourth-degree obstruction; and fourth-degree resisting arrest. On December 19, 2014 defendant was charged with first-degree murder for the killing of Sanders under Indictment 14-12-2979 (Indictment 2979).

The record exhibits multiple delays in defendant's cases. After defendant was charged under Indictment 0080, he was not produced for his scheduled pre-arraignment conference on January 31. The court rescheduled arraignment for March 26, but the arraignment was again postponed. The arraignment finally occurred on April 7. Thereafter there were a series of status conferences set August 15.

During this time a grand jury returned Indictment 2979. Defendant was unavailable for his scheduled arraignment under this indictment which was set for January 13, 2015. The arraignment was adjourned to January 27 but was moved again due to inclement weather. Defendant was ultimately arraigned on February 10. Although his status conference was set for February 23, he was not produced. Thereafter, his status conferences were delayed three additional times due to his pending competency evaluation. The court determined defendant was competent to stand trial on November 16. There were also several

4

status conference dates set by the court between November 16 and July 6, 2016, the plea cutoff date. Thereafter, due to the unavailability of the court and the State, defendant's trial was rescheduled twice.

Prior to trial, on February 17, 2017, defendant pled guilty to the seven amended charges set forth herein in exchange for the State's agreement to recommend a twenty-nine-year sentence with five years of parole supervision on the aggravated manslaughter charge in Indictment 2979 and fifteen- and seven-year prison terms for the charges under Indictment 0080. The State would recommend all counts would "run concurrent within the sole count of the homicide plea."

At the plea hearing, defendant confirmed he had not taken any medications, drugs or drank alcohol and testified he was of sound mind. Defendant further affirmed he understood the charges and the consequences of pleading guilty. He testified he was "satisfied with [plea counsel's] advice" that he reviewed all pertinent documents and reports with plea counsel, was not forced or threatened to plead guilty and made the decision to plead guilty on his own accord.

Defendant confirmed he read, understood, reviewed and completed the plea form with counsel, that counsel explained each question to him, and he

5

answered truthfully. Defendant repeatedly stated that he "want[ed] into this plea." The court found that "defendant ha[d], after advice of competent counsel, with whom he is satisfied, entered plea of guilty freely and voluntarily."

In March 2017, prior to sentencing, defendant filed a pro se motion to withdraw his guilty plea. Subsequently, defendant requested and obtained new counsel after "he raised concerns about" his plea counsel. Defendant's new counsel filed a supplemental motion to withdraw defendant's guilty pleas under both indictments. Defendant argued that the court failed to properly inquire into his mental capabilities during the plea hearing. Defendant's new counsel also questioned the effectiveness of plea counsel.

In an oral decision, the court denied defendant's motion. Initially, the court determined the previous court was aware of defendant's mental health history and found defendant was competent. The court also found defendant failed to satisfy the factors set forth in State v. Slater, 198 N.J. 145, 157-58 (2009). The court rejected defendant's argument that plea counsel had provided ineffective assistance "by allowing him to plead guilty to a crime he did[ not] commit[] and failing to inform him of the affirmative defense of self-defense." The court found defendant's argument was unsubstantiated since he had testified "during the plea hearing that he had enough time to speak with counsel and he

6

understood what both his counsel and the [c]ourt discussed with him on that date." The court further noted that defendant indicated his satisfaction with counsel's services. The court also determined defendant's self-defense argument was without merit, as it found it "ludicrous to argue that plea counsel did[ not], at least, discuss [self-defense] with . . . defendant."

During sentencing, the court found aggravating factors three (risk of reoffending), six (prior criminal record), and nine (need for deterrence) applied. N.J.S.A. 2C:44-1(a)(3), (6), (9). It found no mitigating factors applied. Defendant was sentenced in accordance with the plea agreement.

The court found defendant was subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and awarded him 1,646 days jail credit. Further, all counts pled to under Indictment 0080 were subject to the Graves Act. The court ordered that all sentences under this indictment were to run concurrently with defendant's twenty-nine-year sentence under Indictment 2979. Lastly, the court imposed fines and penalties.

Defendant appealed the order denying his motion to withdraw his plea and the sentence imposed by the trial court. We affirmed the court's denial of defendant's motion to withdraw his plea and the terms of sentence. State v.

7

Richardson, No. A-3428-17 (App. Div. Sept. 25, 2018). The Supreme Court denied defendant's petition for certiorari. State v. Richardson, 205 N.J. 347 (2019).

Defendant filed his PCR application on November 23, 2022. Specifically, defendant alleged plea counsel erred by failing to pursue a speedy trial motion; by providing erroneous advice related to his sentencing exposure from the plea; and by failing to share discovery and communicate with him.

In his motion, defendant certified that he "asked [his counsel] to work out [his] cases as soon as possible but . . . had to wait over three years to have his day in court." Regarding his plea sentencing exposure, defendant stated that counsel "placed [him] under the false assumptions that if [he] accepted the State's plea . . . , [his] sentence would be no more than twenty years in prison with eighty-five percent of parole ineligibility" and "[i]f [he] had the correct information, [he] would not have plead guilty." He repeatedly alleged that counsel rarely met with him and "never showed . . . [him] the evidence against [him]."

The PCR judge held argument on December 15, 2023. Concerning the defendant's argument that plea counsel was ineffective by not filing a speedy trial motion, the judge found the four factors under Barker v. Wingo, 407 U.S.

8

514 (1972), had not been met. It noted that "[b]y [its] calculation, approximately 209 days of delays [we]re unattributable to the State." The judge concluded "defendant frequently delayed his own judicial process by failing to make himself available." Thereafter, the judge found defendant did not "assert[] his speedy trial rights" and even if he had "a speedy trial motion would [not] have been successful."

Concerning defendant's sentencing exposure arguments, the PCR judge found that the plea agreement "unambiguously . . . recommend[ed]" a twenty-nine-year sentence subject to NERA, and defendant agreed to those terms. Additionally, the judge determined defendant heard, understood and agreed to the plea terms at the February 2017 hearing, had failed to corroborate his allegations concerning his counsel and therefore did not "establish a prima facie [showing] of ineffective assistance of counsel on this point."

Lastly, the PCR judge found defendant's argument concerning counsel's alleged failure to communicate and obtain discovery, was "threadbare" because defendant's assertions in his certification, "contradict[ed] what he claimed on the record while pleading guilty." In addition, the judge found that even if defendant's allegations were true, thereby satisfying the first Strickland[1] prong,

---

[1] Strickland v. Washington, 466 U.S. 668 (1984).

"there [wa]s little to suggest . . . the outcome would have been any different, nor that denying the plea agreement and moving forward with the trial would have been a rational decision." The judge noted this was due to the strong evidence against defendant and the potential one-hundred-year sentence defendant faced if a jury convicted him. The judge found defendant failed to establish a prima facie ineffective assistance of counsel claim, and therefore denied defendant's PCR motion without an evidentiary hearing.

On appeal defendant renews his arguments made to the trial court, asserting:

POINT I

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIMS THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.

    A.    Trial Counsel Was Ineffective For Failing [T]o Pursue [A] Speedy Trial Motion.

    B.    Trial Counsel Was Ineffective For Misrepresenting [T]he Total Plea Exposure.

    C.    Trial Counsel Was Ineffective For Failing [T]o Appropriately Communicate With Him and Share Discovery.

Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). A defendant is not automatically entitled to an evidentiary hearing. State v. Porter, 216 N.J. 343, 355 (2013). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if they establish a prima facie case in support of PCR, material issues of disputed fact cannot be resolved by reference to the existing record, and an evidentiary hearing is necessary to resolve the claims for relief. Id. at 354 (quoting R. 3:22-10(b)). The PCR court should grant an evidentiary hearing "if a defendant has presented a prima facie claim in support of [PCR]." State v. Preciose, 129 N.J. 451, 462(1992).

To succeed on an ineffective assistance claim, a defendant must satisfy by a preponderance of the evidence both prongs of the test set forth in Strickland, 466 U.S. at 687, as adopted by State v. Fritz, 105 N.J. 42, 58 (1987). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A PCR judge "must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Under the second prong of the Strickland test, the defendant must show "the deficient performance prejudiced the defense." Id. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. It is insufficient for the defendant to show the errors "had some conceivable effect on the outcome." Id. at 693.

Initially, we address defendant's argument claiming he was entitled to an evidentiary hearing due to plea counsel's failure to file a motion for a speedy trial. The Sixth Amendment and the New Jersey Constitution protect a defendant's right to a speedy trial after arrest or indictment. United States v. MacDonald, 476 U.S. 1 (1982). The four factors courts must weigh in determining whether there was a Sixth Amendment violation, as announced in Barker, 407 U.S. 514, are: (1) length of delay, (2) reasons for the delay, (3) assertion of a speedy trial claim, and (4) prejudice to the defendant. State v. Sizma, 70 N.J. 196, 201 (1976), cert. denied, 429 U.S. 896 (1976).

A-1579-23

Our Court has recognized "most decisions have identified a period of one year or slightly more than one year as the time 'after which . . . it makes sense to inquire further into why the defendant has not been tried more promptly.'" State v. Cahill, 213 N.J. 253, 265 (2013). The seriousness of the offenses and the complexity of the prosecution may overcome this presumption. Ibid. Also, any delay caused or requested by a defendant does not weigh and should not weigh in favor of finding the existence of a speedy trial violation. See State v. Gallegan, 117 N.J. 345, 355 (1989).

Here, defendant's two cases spanned from December 2014, the month defendant was indicted for the first-degree murder of Sanders, to February 2017, the date of defendant's guilty plea. The State conceded and the PCR judge found this was a lengthy delay. However, we conclude the judge correctly found this delay did not entitle defendant to relief. Initially, we determine the prosecution of the matter was complex because defendant was indicted on over twenty counts based on events which occurred on three different dates and included a charge for first-degree murder. Also, defendant's crimes spanned over a period of several months. Additionally, the judge correctly noted the State was not the cause for most of the delays. The judge found the reasons for ten of the delays were attributable to defendant, totaling 209 days. This calculation did not

13

include the delay attributed to defendant's added murder charge. Accordingly, we determine defendant did not satisfy the first two factors under <u>Barker</u>.

We further agree with the PCR judge that defendant also failed to satisfy the remaining factors of <u>Barker</u>. Here, defendant failed to satisfy factor three as he never asserted his right to a speedy trial in the proceeding. Regarding the fourth factor, the judge correctly found that even if plea counsel had filed a speedy trial motion, it would likely have been denied because defendant was responsible for most of the delays. Accordingly, we conclude plea counsel's failure to file a speedy trial motion did not prejudice defendant.

We now turn to defendant's argument that he was entitled to relief or an evidentiary hearing because plea counsel provided erroneous advice to defendant about his maximum sentencing exposure. "A 'guilty plea must be made voluntarily, knowingly, and intelligently.'" <u>State v. Vanness</u>, 474 N.J. Super. 609, 624 (App. Div. 2023) (quoting <u>State v. J.J.</u>, 397 N.J. Super. 91, 98 (App. Div. 2007)). "To succeed on an ineffective assistance of counsel claim based on a plea [agreement], a defendant must show 'that there is a reasonable probability that but for counsel's errors he or she would not have pled guilty and would have insisted on going to trial.'" <u>State v. Gaitan</u>, 209 N.J. 339, 351 (2012) (quoting <u>State v. Nunez-Valdez</u>, 200 N.J. 129, 139 (2009)). In addition, a

14

defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). "Plea counsel's performance will not be deemed deficient if counsel has provided the defendant 'correct information concerning all of the relevant material consequences that flow from such a plea.'" Vanness, 474 N.J. Super. at 624 (quoting State v. Agathis, 424 N.J. Super. 16, 22 (App. Div. 2012)).

Initially, we determine, as found by Judge Callahan, that defendant failed to support his claim with "specific facts and evidence." State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016). Defendant's certification filed in support of his PCR application simply stated that plea counsel assured him that the maximum sentence the court would impose if he pled guilty was twenty years subject to NERA. In contrast, the record shows defendant unambiguously consented to a twenty-nine-year maximum sentence recommendation, subject to NERA. At the hearing he signed the plea forms indicating his consent to the State's sentencing recommendation. Additionally, the record exhibits defendant repeatedly confirmed that he understood the plea agreement, was of sound mind, had the opportunity to ask his counsel questions about the plea agreement, and made the decision to plead guilty "on his own accord." Based on these facts in

the record, we determine defendant failed to satisfy the first prong of Strickland/Fritz.

Second, even if defendant had satisfied the first prong of Strickland, he has not shown his counsel's alleged errors unduly prejudiced him. We agree with the PCR judge that the evidence against defendant was strong, and he was facing a one-hundred-year sentence had a jury found him guilty of the charges. The decision to reject a plea for a nine-year difference in his sentence to risk a potential one-hundred-year sentence would be illogical. Accordingly, we conclude defendant failed to show plea counsel's alleged erroneous advice surrounding the potential length of sentence was prejudicial.

Finally, defendant asserts he is entitled to relief because plea counsel failed to adequately communicate with him and failed to obtain discovery. We are unpersuaded. Again, defendant did not support this allegation with specific facts and evidence. In his certification submitted to the PCR judge, defendant raised counsel's failure to communicate and obtain discovery, but he failed to provide any specific evidence supporting this allegation. Further, his sworn testimony at the plea hearing contradicts these assertions. At the hearing, defendant answered affirmatively when the trial court asked if he had reviewed all documents and exhibits with plea counsel and whether he was satisfied with

16

counsel's services. Defendant reaffirmed on his written plea form that he was "satisfied with the advice . . . received from [his] lawyer." Therefore, we determine the record does not support defendant's assertion that plea counsel failed to communicate with him or obtain discovery. Accordingly, we conclude defendant has not met his burden under the first prong of Strickland/Fritz concerning these contentions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1579-23